Appellees, ninety-eight homeowners in a residential section of Hartselle, Alabama, filed suit against appellants to enjoin the construction and operation of a proposed ready-mix concrete plant on property adjacent to the residential section.
The property made the subject of this suit is Block 0 of the Tanner Heights Addition Number 6, Lots 2 through 9. The concrete plant is located on Lots 2 through 5. The area is an approximate rectangle about 1000 feet long and 300 feet wide. It is bounded on the east by U.S. Highway 31. Appellees are owners of residential property adjacent to the plant and located to the southwest, west, and east across the highway from the plant. The plant is bounded immediately on the north and south by other business concerns; on the north by a farm equipment dealership, a fertilizer mixing plant, and a trucking firm and on the south by a machine shop and a truck rental concern. Also, on the east across U.S. 31 in the vicinity of the plant, is a manufacturing plant and a junk yard.
The area in which appellees reside is zoned R-1 for single family dwellings. Prior to August 22, 1978, Lots 2 through 9 as well as the lots immediately to the north and south were zoned M-1, light industrial. However, on August 22, 1978, the Hartselle City Council adopted an amendment to its zoning ordinance rezoning Lots 2 through 9 M-2, general industrial. The property to the north and south remained zoned M-1 and appellees' property remained zoned R-1.
The next day, appellants commenced grading the lots for the plant site. Appellees filed suit a week later before the grading had been completed. Appellees sought a permanent injunction to prevent the construction and operation of the plant on the basis that the plant would be a nuisance and that the rezoning was null and void. The plant was completed and had been operating for about two and a half months at the time of trial.
At trial the evidence was conflicting as to the amount of dust and noise created by operation of the plant. Some residents testified that they noticed no increase of dust and noise since the plant began operations while other residents testified as to substantial increases of noise and accumulations of dust. Many residents testified that the operation of the plant severely interfered with the use and enjoyment of their homes. They testified that substantial quantities of white dust accumulated both inside and outside their homes, and on their cars, yard furniture, and patios, preventing them from hanging clothes outside to dry, opening windows, or cooking outside. These witnesses also testified that the plant produced loud and bothersome noises sounding like "jackhammers" and "large rocks beating against tin." They stated these noises would commence early in the morning and were loud enough to be heard indoors. Some witnesses also testified that they were bothered by noises from frontend loaders and cement trucks entering the plant for their loads which often entailed banging the tailgates to dislodge sand residues.
The trial court heard the evidence ore tenus and ruled that the rezoning was void. The trial court further held that due to noise created by the plant, accumulations of *Page 1346 
sediments attributable to drainage problems, and inevitable accumulations of dust the plant constituted a nuisance. He restrained appellants from operating the plant after sixty days from the date of judgment.
Appellants first contend that the trial court erred in finding that the operation of the plant was a nuisance. Appellants argue that locality is important in determining a nuisance, and here, appellees purchased their homes near a major highway and business zone where commercial activity could be expected to flourish. Also, appellants maintain that there is no abatable nuisance for doing in a proper manner what is authorized by law; therefore, since the property was rezoned general industrial and the plant was operated in a proper manner in accordance with environmental standards, no finding of nuisance may be had.
"The essence of private nuisance is an interference with the use and enjoyment of land. . . . So long as the interference is substantial and unreasonable, and such as would be offensive or inconvenient to the normal person, virtually any disturbance to the enjoyment of property may amount to a nuisance." W. Prosser, Handbook of the Law of Torts § 89, at 591-93 (4th ed. 1971). Accordingly, this court has often stated that any establishment erected on one's premises, though for the purposes of a lawful trade or business, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, directly causes substantial injury to the property of another or produces material annoyance or inconvenience to the occupants of adjacent dwellings rendering them physically uncomfortable, is a nuisance. In applying this principle it has been repeatedly held that smoke, offensive odors, noise, or vibrations of such degree or extent as to materially interfere with the ordinary comfort of human existence will constitute a nuisance. Baldwinv. McClendon, 292 Ala. 43, 288 So.2d 761 (1974); Coleman v.Estes, 281 Ala. 234, 201 So.2d 391 (1967).
Location is one factor to consider in determining whether a given activity constitutes a nuisance. W. Prosser, supra, at 599. In considering locality, this court has stated:
 What may be a nuisance in one locality may not in another. Noises may be a nuisance in the country which would not be in a populous city. A person who resides in the center of a large city must not expect to be surrounded by the stillness which prevails in a rural district. He must necessarily bear some of the noise and occasionally feel slight vibrations produced by the movement and labor of its people and by the hum of its mechanical industries.
Alabama Power Co. v. Stringfellow, 228 Ala. 422, 425,153 So. 629, 632 (1934). Accord Lauderdale County Board of Education v.Alexander, 269 Ala. 79, 110 So.2d 911 (1959); Higgins v. Bloch,213 Ala. 209, 104 So. 429 (1925).
Thus, locality may be determinative in deciding whether the use of land by defendant unreasonably interferes with plaintiff's use of his land so as to constitute a nuisance. Appellants cite us cases, among them Reed v. Cook ConstructionCo., 336 So.2d 724 (Miss. 1976); Fowler v. Fayco, Inc.,290 Ala. 237, 275 So.2d 665 (1973); and Milton v. Maples, 235 Ala. 446,179 So. 519 (1938), where locality was the decisive factor in a finding of no nuisance. Appellants maintain that these cases mandate a finding of no nuisance in the instant case. However, the determination of the existence of a nuisance necessarily depends upon the circumstances of each case and is a question of fact for the jury or the judge sitting without a jury. See, e.g., Baldwin v. McClendon, supra; Fowler v. Fayco,Inc., supra; Alabama Power Co. v. Stringfellow, supra.
In this case, although there was conflicting evidence as to the amount of noise and accumulations of dust arising from the plant, there was credible evidence that such *Page 1347 
noise and dust caused a substantial and unreasonable interference with the use and enjoyment of appellees' property. Also of importance, the area surrounding the plant consisted of both residential and commercial property, including a heavily traveled highway. But even though there was other commercial or industrial activity in the area, the plant conducted operations of a kind prohibited in the area prior to the rezoning amendment. The presence of some factories in a neighborhood that is still used primarily for residences will not give it an industrial character so as to permit a new establishment which interferes with the plaintiff's use of his land. See Stevens v.Rockport Granite Co., 216 Mass. 486, 104 N.E. 371 (1914);Krocker v. Westmoreland Planing Mill Co., 274 Pa. 143,117 A. 669 (1922); W. Prosser, supra, at 600. Accordingly, we cannot say that the character of the area in question was so predominantly industrial that as a matter of law appellants' operation of the plant would not constitute a nuisance in relation to appellees.
Thus, it was for the trial court, hearing the evidence ore tenus, to determine from all the facts and circumstances whether the operation of the plant substantially and unreasonably interfered with appellees' use and enjoyment of their property. The trial court found that "when consideration is given to the noises created by the business in excess of the noises created by the business for which the area was zoned, the drainage problem which accumulates sediments daily, the dust which is inevitably created under the best operations together with the occasional breakdown of dust control industrial equipment, which appears unavoidable at times, the operation of the plant is a nuisance in relation to the plaintiffs." We find from the record that the trial court's finding is supported by credible evidence and is not palpably wrong or manifestly unjust. Accordingly, it is due to be upheld.
Appellants, relying upon Johnson v. Bryant, 350 So.2d 433
(Ala. 1977), also contend that there can be no abatable nuisance for doing in a proper manner what is authorized by law, and in this case, they merely did what they were properly entitled to do under the zoning ordinance. However, Johnson is inapposite, and it is well established in our case law that a nuisance may exist notwithstanding the fact that the defendant's conduct is lawful and is performed in a proper manner. See, e.g., Coleman v. Estes, 281 Ala. 234, 239,201 So.2d 391, 395 (1967); Alabama Power Co. v. Stringfellow,228 Ala. 422, 425, 153 So. 629, 631 (1934); Higgins v. Bloch,supra; City of Selma v. Jones, 202 Ala. 82, 79 So. 476 (1918). This result is expressly mandated by statute, "The fact that the act done may otherwise be lawful does not keep it from being a nuisance." Code 1975, § 6-5-120. Furthermore, and more applicable to this case, it was stated in Shell Oil Co. v.Edwards, 263 Ala. 4, 10, 81 So.2d 535, 540 (1955), that a city zoning ordinance does not authorize maintenance of a nuisance.
Johnson was essentially concerned with whether an injunction would lie to enjoin an alleged nuisance. "The trial judge's finding that the proposed construction constitutes a nuisancefor which an injunction would lie is overbroad and not supported by the evidence." 350 So.2d at 436 (emphasis added). Thus proceeding under the view that "[i]njunctive relief for nuisances should be cautiously given," the court merely determined that an injunction was not an appropriate remedy — not that the existence of a nuisance was foreclosed. Justice Faulkner made this clear in his dissent, "The majority says, in effect, an injunction can not stand, but if there is an unreasonable use of the property in the future, an action at law for damages will lie." 350 So.2d at 437 (Faulkner, J., dissenting). The majority itself expressly recognized that a nuisance may exist notwithstanding legal authorization of the activity: "The emphasized portion . . . only spells out what this Court said in Rigsby v. Burton [293 Ala. 459,305 So.2d 366], and what may be the general rule, that an act or thing *Page 1348 
authorized by law may be maintained in such a manner as to constitute a nuisance." 350 So.2d at 436-37. Accordingly, inJohnson a sufficient nuisance was not found to exist so as to warrant issuance of an injunction. Thus, it is not authority to proscribe issuance of the injunction in this case.
Since we conclude that the trial court was correct in finding the existence of a nuisance, we need not consider the validity of the amendment to the zoning ordinance. Accordingly, this case must be affirmed.
AFFIRMED.
BLOODWORTH, FAULKNER, ALMON and EMBRY, JJ., concur.