[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 06-15708

———————————————

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 22, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 01-03124 CV-TWT-1

LISA ANN BYARS,

                    Plaintiff-Counter Defendant-Appellant,

                    versus

THE COCA-COLA COMPANY,
THE COCA-COLA LONG TERM DISABILITY INCOME PLAN, et al.,

                    Defendants-Appellees,

RELIASTAR LIFE INSURANCE COMPANY,
KEMPER NATIONAL SERVICES, INC.,
NATLSCO, INC.,

                    Defendants-Counter Claimants-Appellees.

———————————————

Appeal from the United States District Court
for the Northern District of Georgia

———————————————

**(February 22, 2008)**

Before TJOFLAT, ANDERSON and COX, Circuit Judges.

COX, Circuit Judge:

# I. INTRODUCTION

Lisa Ann Byars appeals the district court's judgment denying her "any occupation" long-term disability benefits under an ERISA-governed plan. She also challenges the court's award of "own occupation" benefits falling below 60% of her average compensation, and raises various other issues related to this award. Finally, she challenges the court's denial of her motion for statutory penalties against the Defendants. We vacate in part and affirm in part.

# II. BACKGROUND

Byars worked for The Coca-Cola Company ("Coca-Cola") for twenty-three years until she was injured in August 1999 while vacationing out of the country. No longer able to continue her work, she received from Coca-Cola six months of short-term disability payments under a "payroll practice" plan, the terms of which are irrelevant to this case. While she was receiving short-term disability payments, she filed a claim for long-term disability ("LTD") benefits under The Coca-Cola Long Term Disability Income Plan ("the Plan").

## *A. The Plan*

Coca-Cola's Plan is governed by the Employee Retirement Income and Security Act of 1974, 29 U.S.C. § 1001-1461, and designates Coca-Cola as the sponsor and plan administrator. Coca-Cola delegated its powers as plan administrator

to The Coca-Cola Company Long Term Disability Income Plan Committee ("Committee"), which is the Plan's named fiduciary. The Committee has "the exclusive responsibility and complete and final discretionary authority to construe the Plan and to decide all questions arising under the Plan . . . ." (R.15-216 at CC426 § 7.2(b)(2).[1]) The Committee also has the "exclusive responsibility and the complete and final discretionary authority to determine the eligibility of all Participants to receive benefits and the amount of benefits to which any Participant may be entitled under the Plan . . . ." (R.15-216 at CC426 § 7.2(b)(3).)

The Plan requires the Committee to select one or more Coca-Cola employees to serve as its delegates. The delegates have the "complete discretionary authority and sole responsibility to make all decisions on whether to approve or deny claims for benefits under the Plan and their decisions shall be final and binding on all parties."[2] (R.15-216 at CC430.) The Plan permits the Committee to retain an administrative services provider with responsibility to "investigate and process claims and appeals of denied claims, forward claim determination recommendations to the delegates for review, and issue payment of claims to participants as directed by the delegates."

---

[1] We cite to the Bates numbers in Coca-Cola's claim file, which was filed under seal and is located at Tab 216 of Volume 15 of the record.

[2] We hereinafter refer to The Coca-Cola Company, The Coca-Cola Long Term Disability Income Plan, The Coca-Cola Long Term Disability Income Plan Committee, and the Committee's delegate, Barbara Gilbreath, as "the Coca-Cola Defendants."

3

(R.15-216 at CC430.) ReliaStar Life Insurance Company was the administrative services provider when Byars submitted her claim for LTD benefits.[3]

Under the Plan, a participant is entitled to LTD benefits if she is "disabled." The Plan contains two definitions of disability. Under the first definition, a participant is disabled if, during the first twenty-four months following the disability date,[4] "a physical or mental illness or injury continuously disables him from performing his normal duties for his Employer . . . ." (R.15-216 at CC391 § 1.11) (hereinafter the "own occupation" definition). Under the second definition, a participant is disabled if, after the first twenty-four months, a "physical or mental illness or injury continuously disables him from engaging in any occupation for wage or profit, for which he is reasonably qualified by training, education or experience . . . ." (R.15-216 at CC 391 § 1.11) (hereinafter the "any occupation" definition).

### B. Byars' Claim

Byars filed her claim for LTD benefits on January 26, 2000, claiming that her disability date was on or around August 20, 1999. (R.9-131 at 24 ¶ 28.) Because she

---

[3] In June 1999, ReliaStar outsourced its responsibilities to NATLSCO, Inc., and between August 1999 and December 2002, Kemper National Services, Inc., a subsidiary of NATLSCO, performed all administrative services related to the Plan. We refer to ReliaStar, Kemper, and NATLSCO collectively as "ReliaStar."

[4] The Plan defines "disability date" as "[t]he day next following the last day that a Disabled Participant actively worked for an Employer." (R.15-216 at CC392 § 1.12.)

4

filed her claim within the first twenty-four months following her disability date, the "own occupation" definition applied. ReliaStar denied her claim on April 14, 2000, saying that the medical evidence showed she was still "capable of performing the substantial and material duties of [her] regular occupation" as a Product Consultant. (R.15-216 at CC178.) Byars appealed denial of her claim. ReliaStar upheld its decision on August 30, 2000, again saying that Byars was "not totally disabled from [her] own occupation . . . ." (R.15-216 at CC162.) Then, on January 23, 2001—only seventeen months after Byars' disability date—the Committee informed her that it was upholding ReliaStar's decision to deny her benefits. (R.15-216 at CC8.) Invoking ERISA jurisdiction, 29 U.S.C. § 1132(e), Byars filed this lawsuit in November 2001.

### C. The District Court Proceedings

In her original complaint, Byars asked for a "[d]eclaration of her right to benefits (past, present and future) under the terms of The LTD Plan." (R.1-1 at 56.) She also sought attorney's fees, prejudgment interest, and statutory penalties. In the last of her several amended complaints, Byars elaborated on her request for LTD benefits, contending that she was owed "past due benefits from February 24, 2000 until the present . . . ." (R.9-131 at 50 ¶ 85.)

Nearly five years after Byars filed her original complaint, which had been amended a number of times, the court ruled on the following dispositive motions: it

5

granted in part and denied in part the Coca-Cola Defendants' Motion for Summary Judgment (R.12-193); granted ReliaStar's Motion for Summary Judgment (R.14-198); granted in part and denied in part Byars' Motion for Summary Judgment (R.12-192); and denied Byars' motion for Partial Summary Judgment for Document Withholding Penalties (R.13-195).

The court's first order of business in addressing the summary judgment motions was to establish a standard of review. Relying on *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57 (1989), the court decided that it should review the Committee's decision under an arbitrary and capricious standard because the Plan both designated the Committee as the plan administrator and granted the Committee discretion to make final benefit determinations. The court rejected Byars' argument that ReliaStar was the de facto plan administrator.[5] (Under *Bruch*, ReliaStar's decision would be subject to de novo review because ReliaStar was not vested with discretion.)

Having established a standard of review, the court granted in part Byars' motion for summary judgment by reversing the Committee's decision to deny her benefits under the "own occupation" standard. The court first determined that the

---

[5] We agree with the district court that ReliaStar was not the de facto plan administrator, and consequently, not a proper party to this case. Thus we affirm the district court's grant of ReliaStar's motion for summary judgment.

6

Committee's denial was de novo wrong because the evidence showed that Byars was unable to perform the essential responsibilities of her own occupation. Then, applying arbitrary and capricious review, the court determined "that the Committee's application of the Plan to [Byars'] disability claim was not made rationally and in good faith." (R.15-221 at 15.) The court based this finding on the Committee's January 23, 2001 denial letter in which it stated that Byars was entitled to benefits only if she satisfied the "any occupation" definition of disability. (R.15-216 at CC8.) Because not more than twenty-four months had passed since Byars' disability date, however, Byars was still subject only to the easier-to-prove "own occupation" definition. The court held that the Committee's use of the wrong definition of disability rendered its decision arbitrary and capricious, thereby entitling Byars to twenty-four months of "own occupation" benefits.

After awarding Byars twenty-four months of benefits, the court turned to the question of whether Byars was entitled to benefits beyond twenty-four months under the "any occupation" standard. It concluded that she was not, saying that "[h]er medical records do not demonstrate that she is physically disabled from engaging in any occupation for which she is qualified."[6] (R.15-221 at 14.)

---

[6]    Although the Committee cited the wrong definition in denying Byars benefits during the first twenty-four months following her disability date, the Committee has not actually decided whether Byars is disabled from engaging in any occupation for which she is reasonably qualified beyond twenty-four months. As a result, the remainder of our opinion assumes, as the parties do, that the

Next, the court denied Byars' motion for partial summary judgment in which she sought statutory penalties against the Coca-Cola Defendants and ReliaStar for their alleged failure to disclose documents that she requested after the Committee denied her claim. The court found that Byars failed "to demonstrate . . . that the Defendants' failure to provide all these documents was committed in bad faith or that she was prejudiced by this failure." (R.15-221 at 17-18.) Finally, the court denied both Byars' and ReliaStar's motions for attorney's fees.

The court set a ten-day deadline for receiving proposed final judgments. The Coca-Cola Defendants and ReliaStar filed a joint proposed final judgment, in which they calculated that Byars was entitled to $52,423.68 of "own occupation" benefits. They arrived at this number by subtracting from 70% of Byars' average compensation the amount of Social Security Disability ("SSD") benefits that she was receiving. In her proposed final judgment, filed one day late, Byars calculated that she was entitled to $77,772.00 of "own occupation" benefits, reflecting 60% of her average compensation and not offset by SSD benefits. Including prejudgment interest, Byars requested a total of $137,537.41. She also claimed entitlement to reinstatement of

district court's judgment on the "any occupation" definition is the first time that anyone, including the Committee, has decided Byars' entitlement to those benefits beyond twenty-four months.

8

other benefits that she alleged she would have received had the Committee initially approved her claim.

After refusing to grant Byars' unopposed motion to treat her untimely proposed judgment as filed *nunc pro tunc*, the court adopted the Defendants' joint proposed judgment and awarded Byars $52,423.68 in "own occupation" benefits and costs, without prejudgment interest. Byars appeals. Neither the Coca-Cola Defendants nor ReliaStar cross-appeals.

### III. ISSUES ON APPEAL AND STANDARDS OF REVIEW

The primary issue on appeal is whether the district court erred in deciding, on the parties' cross-motions for summary judgment, Byars' entitlement to benefits under the "any occupation" definition of disability. The propriety of the grant of summary judgment presents a question of law, which we review de novo. *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321, 1325 (11th Cir. 2001).

Byars also raises several issues related to her award of "own occupation" benefits. First, she argues that the amount of "own occupation" benefits awarded by the court violates the terms of the Plan, because it is less than 60% of her average compensation. Second, she argues that because she succeeded on her claim for "own occupation" benefits, the court erred in denying her motion for attorney's fees. Third, she argues that the court should have unambiguously ordered her reinstatement in the

9

Plan, thereby making her retroactively eligible for other employee benefits that she was deprived of as a result of the Committee's denial of her claim. Finally, she argues that the court should have awarded prejudgment interest on her award of "own occupation" benefits. We review the district court's denial of attorney's fees and prejudgment interest for abuse of discretion. *Wright v. Hanna Steel Corp.*, 270 F.3d 1336, 1344 (11th Cir. 2001) (attorney's fees); *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1325 (11th Cir. 2004) (prejudgment interest).

The final issue Byars presents is whether the district court abused its discretion in refusing to award her statutory penalties under 29 U.S.C. § 1132(c) against the Coca-Cola Defendants and ReliaStar for their alleged failure to produce documents as required by ERISA. *Wright*, 270 F.3d at 1342 (articulating standard of review).

## IV. DISCUSSION

### A. "Any Occupation" Benefits

Byars argues that the district court erred in deciding her entitlement to benefits beyond the first twenty-four months following her disability date. She argues that because the Committee never decided whether she was entitled to benefits under the "any occupation" definition, the court should have either remanded her claim to the Committee or held a de novo bench trial to consider evidence that she would have proffered to the Committee in support of "any occupation" benefits.

10

The Coca-Cola Defendants argue that Byars invited the district court to rule on her entitlement to "any occupation" benefits because she requested relief up to the time of filing for summary judgment, well beyond the first twenty-four months following her disability date. The Coca-Cola Defendants also argue that Byars presented the issue of "any occupation" benefits to the district court and submitted evidence in support of those benefits, and therefore, judicial economy counseled that the district court decide her entitlement to them without remanding to the Committee.

We do not write on a clean slate regarding this issue. In *Oliver v. Coca-Cola Co.*, 497 F.3d 1181 (11th Cir. 2007), *vacated in part on petition for reh'g*, 506 F.3d 1316 (11th Cir. 2007), a recent panel of this court held that a district court may rule on a beneficiary's entitlement to "any occupation" benefits even though the plan administrator had not yet done so. The plan in *Oliver* is the same Coca-Cola Plan that is before us. Further, the administrative history in *Oliver* is similar. A beneficiary filed a claim for LTD benefits and the Committee denied his claim under the "own occupation" definition, never reaching the "any occupation" definition. The district court reversed the Committee's denial of "own occupation" benefits, and then concluded that the beneficiary was also disabled under the "any occupation" definition.

11

We held in *Oliver* that the district court did not abuse its discretion in excusing the beneficiary from exhausting his administrative remedies; that is, he was excused from seeking a decision by the Committee in the first instance on his entitlement to "any occupation" benefits. We said that "[e]xcusal of the exhaustion requirement is appropriate 'when resort to the administrative remedies would be futile or the remedy inadequate.'" *Id.* at 1200 (quoting *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997)). We held that exhaustion of remedies would be futile in that case because the Committee had denied the plaintiff benefits based on the easier-to-satisfy "own occupation" definition of disability. We stated that "[t]hat determination necessarily precluded [the plaintiff] from arguing with a straight face to the same insurance company that he was unable to perform the material and substantial duties of *any* occupation." *Id.* at 1200-01 (quoting *Dozier v. Sun Life Assurance Co. of Can.*, 466 F.3d 532, 535 (6th Cir. 2006)) (internal quotation marks omitted).

This case, however, is materially different from *Oliver* in several respects. In *Oliver*, the parties apparently sought summary judgment on Oliver's entitlement to benefits under both definitions of disability. The district court said that it "is called upon to determine from the record evidence whether Oliver was 'disabled' during two separate periods of time, as the term 'disabled' is separately and differently defined

12

in the Plan for the two periods." *Oliver v. Coca-Cola Co.*, 397 F. Supp. 2d 1318, 1325 (N.D. Ala. 2005). The court also noted that the claims administrator "never voiced any distinction between Oliver's status or his ability to function in an employment environment during these separate periods of time." *Id.*

In contrast, neither Byars nor the Coca-Cola Defendants sought summary judgment on the issue of Byars' entitlement to benefits under the "any occupation" definition. Thus, the district court granted summary judgment to the Coca-Cola Defendants on a claim for which they had not sought summary judgment. Although a court may *sua sponte* grant summary judgment on a claim not presented in a summary judgment motion, the court is required to give notice to the parties that it intends to address the claim on summary judgment. Here, the district court provided no notice that it intended to rule on the "any occupation" definition of disability. This was error. *See Imaging Bus. Machs., LLC v. BancTec, Inc.*, 459 F.3d 1186, 1191 (11th Cir. 2006) (holding that *sua sponte* grant of summary judgment without notice to the parties constitutes reversible error); *Massey v. Cong. Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir.1997) (explaining that notice is mandatory before *sua sponte* grant of summary judgment).

The Coca-Cola Defendants argue that Byars invited the district court to rule on her entitlement to "any occupation" benefits, and thus we should not entertain her

argument that the court erred in doing so. There is some confusion in the record to be sure, but we are unable to conclude that the grant of summary judgment was invited error. The Second Amended Complaint is not free of ambiguity. It is a rambling 74-page pleading that asks for a "[d]eclaration of her right to benefits (past, present and future) under the terms of The LTD Plan," and "[p]ayment of all past due benefits due her under the terms of the plan . . . ." (R.9-131 at 69.) The complaint, however, only seeks review of the Committee's decision and nowhere references the "any occupation" definition. But, whether or not the complaint included a claim for "any occupation" benefits, Byars' summary judgment motion did not invite the district court to address the question. A careful review of the motions for summary judgment and the supporting memoranda reveals that neither Byars nor the Coca-Cola Defendants sought summary judgment on the issue of Byars' entitlement to "any occupation" benefits.[7] Byars' memorandum in support of summary judgment is filled

_____

[7]    In addition to the motions and supporting memoranda, the transcript of the March 29, 2005 status conference strongly suggests that Byars understood that she was litigating only the first twenty-four months of benefits. We repeat excerpts of the hearing:

> The Court: In some of the cases, or maybe all of them, you're limiting your claim to a 24-month period of disability for the Plaintiffs' own occupation. Did I say that right?
> [Byars' counsel]: Well, I want to just be clear on one thing, that our claim is actually for the ongoing benefits, because it's our contention that each of our clients is still continuing to be disabled. . . . However, because there's a two-part definition and there's the argument that the plan should be afforded deference and you already ruled on something very similar with whether or not we exhausted administrative remedies on certain issues, we're willing to allow the 24-month period to be litigated with the–you know, assuming that Plaintiff was found entitled for the entire 24 months,

14

with references and arguments pertaining only to the Committee's error under the "own occupation" definition.[8] Similarly, the Coca-Cola Defendants' supporting memorandum constantly refers to Byars' failure to prove that she could not perform her own job at Coca-Cola.[9]

This case is different from *Oliver* in another respect. In *Oliver*, all parties agreed that there was no material issues of disputed fact, and no one suggested that the record was incomplete. On the other hand, there exists disputed issues of fact

---

then the case would be remanded at that point for determination, first, by the Plan about the continuing benefits from month 25.

. . .

But in this particular case, we are willing to go ahead and just litigate whether or not the decision was appropriate for the first definition of disability and agree that the claim–if the claimant is liable for the 24-month period, it should be remanded to the plan administrator for determination of the change in definition.

(R.20 at 12-13.)

[8] *See* R.12-192 at 2 ("Coca-Cola's denial of LTD benefits during the first 24 months was arbitrary and capricious . . . ."); *id.* at 13 (evidence overwhelmingly showed "her inability to perform the normal duties of her ***own job*** at Coca-Cola") (emphasis in original); *id.* at 17 ("Byars' condition prevented her from being able to perform the normal duties of her job at Coca-Cola."); *id.* at 26 ("The additional evidence submitted to Coca-Cola confirms Ms. Byars' inability to perform the job responsibilities of her past work . . . ."); *id.* at 27 ("Byars' mental impairment prevented her from performing the normal duties of her job at Coca-Cola . . . .").

[9] *See* R.12-193 at 4 ("Plaintiff never showed by objective measures how her diagnosed injury (sciatica) and illness (social anxiety disorder) prevented her from performing the normal duties of her sedentary job at Coca-Cola."); *id.* at 17 (to receive benefits Plaintiff must show among other things that "her illness or injury rendered her unable to perform her duties as a Support Specialist"); *id.* at 18 ("Plaintiff was required to prove that she was also continuously unable to perform the normal duties of her sedentary position."); *id.* at 19 ("[T]he medical documentation that Plaintiff provided did not support her claim that sciatica and social anxiety prevented her from performing her sedentary occupation."); *id.* at 20 ("Plaintiff did not prove that her alleged depression or social anxiety continuously prevented her from performing her job at Coca-Cola.").

15

about whether Byars could satisfy the "any occupation" definition. For example, Dr. Payne indicated in his functional assessment of Byars that her "full capacity" for sitting and standing was limited to two hours a day, while her "full capacity" for walking was limited to one hour a day. (R.15-216 at CC111.) In this same assessment, Dr. Payne selected the option "[s]evere limitation of functional capacity/incapable of sedentary work" to describe Byars' physical impairment. (R.15-216 at CC114.) Dr. Payne also opined in a letter to the Committee that Byars "is disabled and incapable of doing any type of work which requires prolonged periods of either sitting or standings as these only aggravate her sciatic symptoms." (R.15-216 at CC16.) Even more telling is the conclusion that Jack Sink, a vocational expert, arrived at in his Comprehensive Vocational Assessment of Byars:

> All of these facts must lead to the conclusion that Ms. Byars does experience pain which is debilitating and which prevents her from being a competitive worker. In brief, *Ms. Byars simply does not have the ability for sustained physical and/or mental performance necessary to meet a competitive standard of work in her previous job, or in any other job*, *so long as she continues to have her current limitations*. Since her physicians have found her to be at maximum medical improvement, it is assumed that the limitations she currently experiences will continue.

(R.15-216, Ex. 10 to Ex. 2 Demand Letter at 10) (emphasis added).

But, the Coca-Cola Defendants also presented evidence showing that although Byars has reached her maximum medical improvement, she is capable of doing some work, as long as she is able to frequently adjust positions. (R.15-216 at CC16) (letter

of Dr. Payne opining that Byars "is disabled and incapable of doing any type of work which requires prolonged periods of either sitting or standing"). Furthermore, ReliaStar and its reviewing physicians believed the evidence did not support Byars' claim for disability even under the "own occupation" definition. (R.15-216 at 15) (ReliaStar physician review report that "there is nothing documented that is objective that would support the patient's continued disability"). Unlike in *Oliver*, there are genuine issues of fact regarding the extent of Byars' disability. The district court denied Byars benefits under the "any occupation" definition because "[h]er medical records do not demonstrate that she is physically disabled from engaging in any occupation for which she is qualified." (R.15-221 at 14.) Byars, however, was never required to produce evidence supporting a claim for "any occupation" benefits because the Committee denied her claim before the "any occupation" definition became applicable at the twenty-fifth month following her disability date. Byars should not suffer an adverse decision because of a failure to present evidence supporting the "any occupation" definition.

We hold, therefore, that the district court erred in deciding Byars' entitlement to "any occupation" benefits on summary judgment.

### B. Awards Relating to "Own Occupation" Benefits

(1) The Plan's Offset Provision

According to section 4.1 of the Plan, an eligible participant will receive monthly benefits in an amount equal to 60% of her average compensation: "The Participant who incurs a Disability will receive a monthly benefit in an amount equal to 60 percent of his Average Compensation, reduced to account for disability benefits payable from other sources, as required under Section 4.2." (R.15-216 at CC402.) Section 4.2(a) of the Plan, entitled "Offset for Other Disability Benefits," provides:

> The monthly Disability benefit payable from this Plan to the Participant who receives disability benefits from any source described in Subsection (b) will be reduced as necessary so that the total of his monthly Disability Benefit from this Plan equals no more than the following amount: (1) 70 percent of his Average Compensation . . ., minus (2) the amount of his monthly disability benefits payable from all other sources; . . . *provided further that the offset for other disability benefits will not serve to reduce the Disability Benefit under this Plan to an amount less than 60 percent of the Participant's Average Compensation as limited*.

(R.15-216 at CC402-03) (emphasis added).

Byars argues that the italicized language creates a 60% floor below which an offset may not reduce benefits. According to her interpretation then, the district court

18

erred in accepting the Coca-Cola Defendants' proposed judgment of "own occupation" benefits in an amount less than 60% of her average compensation.[10]

The Coca-Cola Defendants respond with two points. First, they argue that Byars has failed to challenge a previous order of the district court barring her from raising this issue. Second, they argue that the issue is not ripe for review because Byars did not present the issue in her summary judgment papers and, consequently, the district court never considered it.

We do not agree that Byars is barred from raising this issue. Byars raised the it in her Second Amended Complaint where she requested a "[d]eclaration of her right to benefits in an amount not less than at 60% of her salary." (R.9-131 at 69.) She also raised the issue in her memorandum in support of summary judgment (R.12-192 at 29), in her Proposed Judgment (R.16-225 at 4-10), and has thoroughly briefed the issue on appeal. Nor do we read the order of the district court cited by the Coca-Cola Defendants (R.8-115, Order Granting in Part Defendants' Motion to Dismiss Class Claims) as barring Byars from asserting her individual right to benefits that do not fall below 60% of her average compensation. Rather, the court in this order dismissed all *class* claims while preserving Byars' right to seek relief individually. Nowhere in the

---

[10]    In their proposed judgment, the Coca-Cola Defendants said that Byars' average monthly compensation was $5,159.03. Taking 70% of this number, $3,611.32, and subtracting from it Byars' SSD benefits, $1,427, results in a monthly award of $2,184.32, less than 60% of $5,159.03, which is $3,095.41.

order does the court hold that Byars cannot raise the 60% argument in her individual claim. Therefore, Byars has preserved this issue.

Nevertheless, we refuse to consider the merits of this issue. While the district court granted summary judgment and entered an order on the issue of liability, its summary judgment opinion did not discuss this issue, despite Byars specifically asking for "past due LTD Plan benefits at a minimum floor of 60% of her pre-disability earnings in accord with the plan documents . . . ." (R.12-192 at 29.) The district court only entered a final order awarding Byars an amount of benefits below 60% of her average compensation. If Byars is correct that the Plan does impose a 60% floor on benefits, then the court's final order is contrary to the terms of the Plan, and was entered without a finding by the court on the issue. Therefore, we vacate the judgment with respect to the amount of "own occupation" benefits awarded to permit the district court to address the issue in the first instance.

(2) <u>Attorney's Fees</u>

ERISA provides for an award of attorney's fees: "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). We have refused to interpret this provision as creating a presumption in favor of awarding fees. *Freeman v. Cont'l Ins. Co.*, 996 F.2d 1116, 1119 (11th

Cir.1993) ("The law provides no presumption in favor of granting attorney's fees to a prevailing claimant in an ERISA action."); *see also Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Ala.*, 41 F.3d 1476, 1485-86 (11th Cir. 1995) (quoting *Freeman* and refusing to adopt presumption of awarding fees).

District courts in our circuit should consider five factors in determining whether to award attorney's fees:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; [and] (5) the relative merits of the parties' positions.

*Freeman*, 996 F.2d at 1119.

Byars' main argument is that the court did not explain its reasons for denying fees. She argues that the court should have "carefully analyzed the relevant factors showing how its findings are supported by the record, and set forth principled reasons for apparently concluding that the Coca-Cola defendants' conduct . . . did not merit attorneys' fees being awarded." (Byars Initial Br. at 40.) Precedent in this circuit does not support such a requirement.

Although "it would be helpful if district courts specifically referred to each of [these] factors in their analysis," *Plumbers & Steamfitters Local 150 Pension Fund*

21

*v. Vertex Constr. Co., Inc.*, 932 F.2d 1443, 1453 (11th Cir. 1991), we have said that "so long as a court's analysis takes these guidelines into account, it does not abuse its discretion by not enumerating each and every one." *Id.* In fact, the case originally setting forth these factors, *Iron Workers Local 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980),[11] understood them to operate only as a "guideline[] to assist [district courts] in exercising their discretion" and as a "nuclei of concerns that a court should address in applying section [1132(g)]." *Id.* at 1266.

The district court's analysis satisfies our test. The court listed the five factors and concluded that "[h]ere, these factors do not weigh in favor of an award of attorney's fees against the Defendants or against the Plaintiff." (R.15-221 at 20.) We hesitate to require the district court to do more than it did, that is, list the factors and conclude that they do not favor an award of fees.

We also conclude that the district court did not abuse its discretion in denying fees. Our cases have not infrequently affirmed denial of attorney's fees where the ERISA beneficiary prevails in the district court on a claim for benefits. For example, in *Florence Nightingale*, a healthcare provider sued a plan administrator for denying its claim for reimbursement of benefits provided to a plan participant. The district

---

[11]    We have adopted as binding precedent cases of the former Fifth Circuit decided before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

22

court reversed the administrator's decision, but denied the provider's petition for attorney's fees. The court considered only the first factor, bad faith, and concluded that the plan administrator had an arguable basis for denying the healthcare provider's claim. We affirmed denial of fees recognizing that the district court "is in the best position to judge the propriety of awarding fees." 41 F.3d at 1485; *see also Dixon v. Seafarers' Welfare Plan*, 878 F.2d 1411, 1413 (11th Cir. 1989) (affirming denial of attorney's fees to successful ERISA claimant in part because the administrator had a reasonable basis for denying benefits). The district court did not abuse its discretion here.

(3) <u>Reinstatement and Retroactive "Other Employee" Benefits</u>

Byars argues that she is entitled to be reinstated in other employee benefit plans, at least for the first twenty-four months that the court awarded her "own occupation" benefits. Byars more specifically asks us for a declaration that she is "eligible for reimbursement of any would-be-covered expenses had they occurred." She bases her entitlement to reinstatement (and consequently, reimbursement) on the Summary Plan Descriptions and the 1999 Total Compensation Perspective ("TCP"), which together essentially provide that an employee who is determined to be disabled under the Plan is eligible to continue her participation in other employee benefit

plans. The TCP also states that an approved LTD beneficiary is entitled to automatic vesting of stock options.

The Coca-Cola Defendants argue two points in response. First, they argue that the remedies that Byars seeks are external to the Plan and not recoverable under § 1132(a)(1)(B), which limits recovery to "benefits due . . . under the terms of [the] plan." Second, they argue that Byars never submitted claims to the administrators of these other employee plans.

Although Byars has from the inception of this litigation requested reinstatement in and reimbursement from other benefit plans, nowhere has Byars claimed that she actually incurred expenses related to these other plans that would have been covered had the Committee approved her claim for LTD benefits. The Smith Report, upon which Byars based her proposed final judgment, calculates "the value of past medical and retirement benefits" for the first twenty-four months at either $8,792 or $9,587 (R.16-225, Ex. F at 4, ¶ II(A)), but nowhere does Byars specify to which amount she is entitled, nor does she explain why she is entitled to the value of the benefits of other employee plans that she never utilized. The district court did not err in not awarding Byars relief related to other employee benefit plans.

(4) Prejudgment Interest

Byars argues that the district court abused its discretion in refusing to award prejudgment interest at a statutory rate of 12% on her award of "own occupation" benefits. *See* Ga. Code Ann. § 7-4-12 (establishing Georgia's post-judgment interest rate). We cannot say on this record that the district court abused its discretion in refusing to award prejudgment interest.

In her proposed final judgment, which the district court refused to accept as untimely, Byars requested interest on "own occupation" benefits at a rate of 12%, totaling $59,765.41. This amount is greater than her award of "own occupation" benefits, $52,423.68. Furthermore, Byars bears some fault for the extended period of time required to litigate this case to judgment. She filed several amended complaints, a class action complaint, requested two discovery extensions, filed six motions to extend various deadlines, three motions to file various briefs as *nunc pro tunc*, and a motion to disqualify the district judge. As the Coca-Cola Defendants point out in their brief here, a similar case involving the same Plan and Defendants was resolved on summary judgment within six months. (Coca-Cola Defendants Br. at 14 n.4.) This case has been ongoing for years. The district court did not abuse its discretion in denying Byars prejudgment interest on these facts.

### C. Document Withholding Penalties Under § 1132(c)

ERISA requires a plan administrator to furnish the following upon written request from a plan participant: "the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). District courts are vested with discretion to award a daily statutory penalty if a plan administrator either refuses or fails to comply with a written request within thirty days. 29 U.S.C. § 1132(c)(1). In 1997, the daily penalty was increased from $100 to $110. 29 C.F.R. § 2575.502c-1 (2007).

Pursuant to § 1132(c)(1), Byars filed a Partial Motion for Summary Judgment seeking over $500,000 in statutory penalties against the Coca-Cola Defendants and ReliaStar. She argued that although the Coca-Cola Defendants provided her counsel with a copy of the Plan and Summary Plan Description in response to her counsel's request in a related case, she did not receive all of the documents requested until 318 days after the deadline in § 1132(c)(1), and therefore, was entitled to statutory penalties.

The court denied her motion with respect to both defendants. The court found that the Coca-Cola Defendants were reasonable in believing that Byars did not need a second copy of the Plan and Summary Plan Description, and that Byars failed to

26

show either that the Defendants' delay in producing the documents was made in bad faith or that the delay prejudiced her.

After reviewing the record, we conclude that the district court did not abuse its discretion in refusing to award statutory penalties. The Coca-Cola Defendants reasonably believed that Byars' counsel already had a copy of the Plan and Summary Plan Description. Furthermore, the Coca-Cola Defendants notified Byars within thirty days of her request that it had authorized ReliaStar to provide her with a complete copy of her claim file. Additionally, as the district court pointed out, the regulations that Byars relied on as authority for her request do not apply to § 1132(c)(1), but rather apply to § 1133, which establishes the types of claims procedures that administrators are required to maintain. Finally, ReliaStar was not subject to document withholding penalties, as the statute only permits an award of penalties against the plan administrator, and, as discussed above, the Committee, not ReliaStar, is the Plan administrator.

Nor did the district court "essentially require[] Byars to show clear prejudice in order to be awarded document penalties." (Byars Initial Br. at 46.) While a district court may not deny penalties solely on the basis of a lack of prejudice, prejudice is a factor that a court should consider in exercising its discretion. *See Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1232 (11th Cir. 2002). The district court did not

27

deny Byars penalties solely because she failed to show prejudice; rather, the court considered prejudice as a factor in exercising its discretion, which it is required to do under our case law.

Finally, the purpose of the disclosure penalty would not be advanced if a penalty was awarded here. The penalty is designed to punish the violator of the disclosure provisions. *See Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir. 1993) (reasoning that penalty's disconnect from any harm suffered by the beneficiary suggests that "section 1132(c) is intended to punish noncompliance with the employer or administrator's disclosure obligations"). Here, the district court found no bad faith on the part of the Coca-Cola Defendants. To the contrary, the court found that the Coca-Cola Defendants had already produced some of the requested documents and had authorized ReliaStar to provide Byars with a copy of her claim file. Therefore an award of penalties here would not further the purpose of the statutory provision, to punish an administrator's noncompliance with its disclosure obligations.

## V. CONCLUSION

For the foregoing reasons, we vacate that portion of the court's judgment against The Coca-Cola Company, The Coca-Cola Long Term Disability Income Plan, The Coca-Cola Long Term Disability Income Plan Committee, and Barbara Gilbreath ("the Coca-Cola Defendants") fixing the amount of "own occupation" benefits

awarded to Byars and that portion of the court's judgment in favor of the Coca-Cola Defendants denying "any occupation" benefits to Byars, and we remand for further proceedings consistent with this opinion. The court's judgment is otherwise affirmed.

VACATED AND REMANDED IN PART; AFFIRMED IN PART.