[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-10789

Non-Argument Calendar

_____

BARRY YEAGER,
RAMONA YEAGER,

Plaintiffs-Appellants,

versus

ADVANCED DISPOSAL SERVICES ALABAMA LLC,
ADVANCED DISPOSAL SERVICES MOBILE TRANSFER
STATION LLC,
MR. BULT'S INC,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:19-cv-01040-KD-N

_____

Before ROSENBAUM, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

Barry and Ramona Yeager appeal the district court's entry of summary judgment in favor of the defendants on their state-law claims for nuisance, negligence, wanton conduct, and violation of state administrative rules. We conclude that the district court erred in granting summary judgment on the Yeagers' nuisance claim against defendant Advanced Disposal Services Mobile Transfer Station LLC. We therefore vacate the judgment in part, affirm in part, and remand for further proceedings consistent with this opinion.

## I.

Barry and Ramona Yeager built their home in Theodore, Alabama more than 30 years ago and have lived there ever since. In 2011, defendant Advanced Disposal Services Mobile Transfer Station LLC (ADS Mobile) built a garbage transfer station across the street from the Yeagers' property. ADS Mobile obtained a solid waste permit from the Alabama Department of Public Health in December 2011 and began operating the transfer station soon thereafter. ADS Mobile continued to run the transfer station until the facility was sold in October 2020.

At the transfer station, garbage collection trucks dump their loads of solid municipal waste onto a concrete "tipping floor." Defendant Mr. Bult's, Inc., which was initially hired by ADS Mobile, loads the waste from the tipping floor into tractor trailers and transports it to a landfill. According to the Yeagers, the transfer station has caused noise, odors, wind-blown trash, and vermin (primarily seagulls) that have interfered with the enjoyment of their property and diminished its value.

In October 2019, the Yeagers filed a complaint in Mobile County, Alabama against ADS Mobile, Advanced Disposal Services Alabama LLC (ADS Alabama), and Mr. Bult's, alleging that the transfer station was a nuisance, that the defendants' acts and omissions were negligent and wanton, and that the defendants willfully and intentionally violated Alabama State Board of Health rules by locating the transfer station within 500 feet of their home. The Yeagers sought injunctive relief, compensatory and punitive damages, and costs and attorney's fees.

Mr. Bult's removed the action to federal court based on diversity jurisdiction, and all three defendants eventually moved for summary judgment. ADS Alabama and Mr. Bult's sought summary judgment on all the Yeagers' claims against them. ADS Mobile, however, sought only partial summary judgment on the Yeagers' claims for wantonness, negligence, and violation of state regulations, and on their claims for injunctive relief, punitive damages, mental anguish damages, and damages for diminution of property value. ADS Mobile also moved for partial summary

judgment on the Yeagers' nuisance claim, but only to the extent that the claim was based on (1) allegations of a nuisance per se, (2) independent conduct of third parties (such as third-party owners of garbage trucks), (3) operations of the transfer station after it was sold in October 2020, and (4) any alleged violation of the state regulation providing for a 500-foot buffer zone between the transfer station and nearby residences.  ADS Mobile did not seek summary judgment on the Yeagers' nuisance claim in its entirety.

Nonetheless, the district court entered summary judgment in favor of all three defendants, on all of the Yeagers' claims.  The Yeagers now appeal.

## II.

We review a district court's grant of summary judgment de novo, viewing the evidence and drawing reasonable inferences of fact in favor of the nonmoving party. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1186–87 (11th Cir. 1999).  Summary judgment is appropriate if the pleadings and evidence of record show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).  Although a district court may grant summary judgment

on a claim not raised by the movant, it must first provide notice to the parties that it intends to address the claim at summary judgment. *Byars v. Coca–Cola Co.*, 517 F.3d 1256, 1264 (11th Cir. 2008); *see* Fed. R. Civ. P. 56(f).

If the moving party meets its initial burden, the nonmovant must then show that a genuine dispute exists regarding any issue for which it will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 324. The nonmovant can withstand a summary judgment motion by establishing that "based on the evidence in the record, there can be more than one reasonable conclusion as to the proper verdict." *Burton*, 178 F.3d at 1187.

## III.

### A.

Under Alabama law, a nuisance is "anything that works hurt, inconvenience, or damage to another," as long as the hurt or inconvenience is not "fanciful or such as would affect only one of a fastidious taste." Ala. Code § 6-5-120. "The essence of private nuisance is an interference with the use and enjoyment of land." *Crouch v. N. Ala. Sand & Gravel, LLC*, 177 So. 3d 200, 209 (Ala. 2015) (*quoting Morgan Cnty. Concrete Co. v. Tanner*, 374 So. 2d 1344, 1346 (Ala. 1979)). "[V]irtually any disturbance to the enjoyment of property may amount to a nuisance," provided that "the interference is substantial and unreasonable, and such as would be offensive or inconvenient to the normal person." *Id.* (*quoting Morgan Cnty. Concrete Co.*, 374 So. 2d at 1346).

The plaintiff in an Alabama nuisance action "must show conduct, be it intentional, unintentional, or negligent, on the defendant's part, which was the breach of a legal duty, and which factually and proximately caused the complained-of hurt, inconvenience, or damage." *Hilliard v. City of Huntsville Elec. Util. Bd.*, 599 So. 2d 1108, 1113 (Ala. 1992). In resolving nuisance claims, Alabama courts recognize a duty to not materially interfere with the use and enjoyment of neighboring properties. *See Kyser v. Hertzler*, 188 Ala. 658, 662 (1914) ("Even in the ordinary use of property, in its use for purposes that are regarded as incident thereto, a person is bound to prevent such use from becoming a nuisance to others if possible." (citation omitted)); *see also Baldwin v. McClendon*, 292 Ala. 43, 48 (1974) (a person "may not so use his property as to injure another"). As to causation, the plaintiff must show both factual or "but-for" causation and proximate or legal causation. *Hilliard*, 599 So. 2d at 111–12; *see Springer v. Jefferson Cnty.*, 595 So. 2d 1381, 1383–84 (Ala. 1992). "In Alabama, the issue of proximate causation hinges on foreseeability and is intertwined, analytically, with the concept of intervening cause." *Springer*, 595 So. 2d at 1384.

Thus, even a lawfully established business will be deemed a nuisance if because of "the situation, the inherent qualities of the business, or the manner in which it is conducted," it directly causes "material annoyance or inconvenience to the occupants of adjacent dwellings rendering them physically uncomfortable." *Morgan Cnty. Concrete Co.*, 374 So. 2d at 1346. "[S]moke, offensive odors, noise, or vibrations of such degree or extent as to materially

interfere with the ordinary comfort of human existence will constitute a nuisance." *Id.*

The Yeagers presented sufficient evidence to create a genuine issue for the jury on their nuisance claim against ADS Mobile based on noise, odors, and seagulls caused by the operation of the transfer station. Regarding noise, Mr. Yeager complained that trucks entering and leaving the facility created noise beginning at about 4:15 a.m. and continuing throughout the day. Mrs. Yeager testified that she had been awakened as early as 3:30 in the morning "ten or more times" in just over three years (since her retirement in December 2017) by the noise and flashing lights from trucks entering or waiting outside the gates of the transfer station.

The district court concluded that the noise from increased traffic around the transfer station was insufficient to constitute a nuisance as a matter of Alabama law, and that in any event, ADS Mobile was not responsible for the noise or other inconvenience caused by trucks owned by third parties. But although increased traffic alone will not support an Alabama nuisance claim, it may be one element of such a claim. *Parker v. Ashford*, 661 So. 2d 213, 217 (Ala. 1995); *see Fugazzoto v. Brookwood One*, 295 Ala. 169, 172 (1976). And where heavy-truck traffic is an "inevitable consequence" of a business's operation, the business may be held liable for a nuisance caused by those trucks traveling on nearby public roads even if the trucks are owned and operated by independent third parties. *See Hall v. N. Montgomery Materials, LLC*, 39 So. 3d 159, 177 (Ala. Civ. App. 2008) (if nearby roads would be

damaged and made dangerous by heavy-truck traffic associated with a mining operation, "then the mining company's business is a nuisance—irrespective of the fact that the mining company has no responsibility for the trucks that will be owned and operated by independent contractors and irrespective of the fact that maintaining the roads is the county commission's responsibility—because the heavy-truck traffic is an inevitable consequence of the mining company's business").

The record indicates that the transfer station received waste seven days a week, opening at 4:00 a.m. Monday through Saturday. Mr. Bult's typically transported ten tractor-trailer loads of garbage per day from the transfer station to the landfill five days a week; presumably, several times that number of smaller garbage trucks also entered and departed the facility daily. Heavy truck traffic beginning very early in the morning was therefore an inevitable—and thus foreseeable—consequence of operating the transfer station.

Whether the noise caused by truck traffic associated with the transfer station was sufficient to constitute a nuisance (in combination with the odors and seagulls complained of by the Yeagers) "is a question of fact dependent on the nature and character of the noise, its constancy or frequency, and the extent of the inconvenience caused by it." *Id.* at 173. The Yeagers—who are presumed to be ordinary, reasonable people—testified that the noise from the garbage trucks and tractor-trailers interfered with the comfort and enjoyment of their home, especially early in the morning. *See Baldwin*, 292 Ala. at 48 ("people generally, in the absence of proof

to the contrary, will be presumed to have" ordinary sensibilities); *see also Alabama Power Co. v. Stringfellow*, 228 Ala. 422, 426 (1934) (plaintiff's loss of sleep "was a circumstance going to the nature and extent of the noise and whether or not it constituted a nuisance"). A decision on this question of fact must be left for the jury.

The Yeagers also presented sufficient evidence of foul odors coming from the transfer station to create a genuine issue of fact on their nuisance claim against ADS Mobile. Indeed, ADS Mobile acknowledged as much in its motion for partial summary judgment. The district court committed reversible error by entering summary judgment on a ground that the defendant had not argued without first giving the plaintiffs notice and an opportunity to address the issue. *See* Fed. R. Civ. P. 56(f); *Byars*, 517 F.3d at 1264; *Imaging Bus. Machines, LLC v. BancTec, Inc.*, 459 F.3d 1186, 1191 (11th Cir. 2006).

And in any event, the district court's reasoning on this issue is not supported by the record or by Alabama law. The court concluded that "evidence of an occasional odor that on one occasion required an outdoor event to be moved indoors is insufficient for a reasonable jury to find that the odor is a nuisance under the law." *Yeager v. Advanced Disposal Servs. Alabama, LLC*, No. 1:19-CV-1040-KD-N, 2022 WL 179276, at *6 (S.D. Ala. Jan. 19, 2022). This conclusion gives short shrift to the Yeagers' testimony, while also overstating the showing required to prove an odor-related nuisance under Alabama law.

Mr. Yeager described a smell of "dead animals, rotten sea-food, and high garbage" that was "sporadic" rather than constant and had become "really prevalent" in the last three or four years. He testified that the smell was strongest at around noon, could last until evening, and was worse in hot weather or when the wind blew from the direction of the transfer station.  He made clear, however, that the odor was present even with the wind in their favor—and in calm weather, the smell "just hover[ed] around."

Mr. Yeager testified that the Yeagers' son, who owned property next door, had noticed the smell, and that their son-in-law had commented on the odor on "at least five" occasions when visiting the Yeagers.  Other relatives and friends had also complained of the odor, though the Yeagers continued to plan and host large gatherings.  Mr. Yeager explained that he was embarrassed by the smell but refused to "let stuff like that control [him]."  He testified that "a lot of times we will just go inside but we're going to do what we want to do."  Mrs. Yeager generally agreed with her husband, though she emphasized that the odor was present at night too, and she provided notes she had made regarding three or four additional occasions when the odor was severe or guests complained about the odor.  Both Mr. and Mrs. Yeager referred to a Christmas gathering when their guests had to go inside because "they couldn't stand the smell outside."

This testimony was sufficient to create a jury issue on the nuisance claim under Alabama law.  The Alabama Supreme Court has explained that while "noisome smells" will be actionable only

if they "materially interfere with the comfortable enjoyment of property," all that is required is that "they are offensive, or produce such consequences, inconvenience or discomfort, as to impair the comfortable enjoyment of property, by persons of ordinary sensibilities." *Baldwin*, 292 Ala. at 48 (citation omitted). So a "smell that is simply disagreeable to ordinary persons, is such physical annoyance as makes the use of property producing it a nuisance." *Id.* (citation omitted).

The Yeagers also testified that they were inconvenienced by seagulls attracted to the transfer station. Mr. Yeager testified that the seagulls began flocking overhead immediately after the transfer station opened and had been continuously present ever since. He testified that he had found dead or injured seagulls in his yard, and that seagull droppings made noticeable stains on the black metal roof of their home. Mrs. Yeager testified that in the two or three years since they had the metal roof installed, she had purchased a cleaning product and cleaned seagull droppings from the roof herself once and anticipated having to do it again. While this degree of inconvenience might not support a nuisance claim on its own, the Yeagers produced at least some evidence for the jury to consider whether the presence of seagulls contributed to the alleged nuisance.

The district court concluded that the Yeagers had not presented sufficient evidence to raise a genuine issue as to whether the operation of the transfer station caused the Yeagers' seagull problems. We disagree. Under Alabama law, plaintiffs can use

circumstantial evidence to prove causation. *See Carruth v. Pittway Corp.*, 643 So. 2d 1340, 1346 (Ala. 1994). Mr. Yeager's testimony that there had been no seagulls present in the 20 years before the transfer station opened and that they began having problems with seagulls when the transfer station began its operations, coupled with a defense witness's admission that vectors (disease-carrying animals like rats or seagulls) are attracted to waste transfer stations, was sufficient to support an inference that the transfer station's operation caused the abundance of seagulls.

But other aspects of the Yeagers' nuisance claim do not fare as well. For example, the Yeagers failed to present even circumstantial evidence supporting their claim that the transfer station's operations caused rats on their property. Mr. Yeager acknowledged that they had regularly paid for pest control for rats long before the transfer station opened. He also agreed that rats could be coming from the wooded areas around their home, or from the property next door that the Yeagers' son had clear cut—thereby destroying a natural habitat for rats and causing them to go elsewhere—two years earlier.

And although the Yeagers insist that ADS Mobile should be held responsible for trash dropped in the street in front of their house and blown into their yard, their evidence falls short of establishing proximate causation for that aspect of their nuisance claim. The Yeagers testified that the trash in their street and yard was caused by third parties carrying loads of garbage in uncovered, open-topped trucks in violation of Alabama law. *See* Ala. Admin.

Code § 420-3-5-.11(3)(c)8 (2017) (requiring garbage collectors and transporters to use tarps or other restraining devices as necessary to control windblown litter from their vehicles).  They presented no evidence that any of the defendants' trucks had dropped trash on their street or in their yard, that trucks owned or controlled by any of the defendants had ever transported garbage to or from the transfer station with an uncovered load, or that trash from the transfer station itself had blown into the street or surrounding properties.  Unlike the traffic and noise from trucks using the transfer station, the failure of some third-party truck operators to comply with applicable regulations for transporting garbage was not foreseeable to ADS Mobile, and the litter resulting from that failure was not an "inevitable consequence" of operating the transfer station. *Hall*, 39 So. 3d at 177; *see Tipler v. McKenzie Tank Lines*, 547 So. 2d 438, 440–41 (Ala. 1989) ("we must look to the particular facts of each case to determine whether the party charged with creating and maintaining a nuisance has engaged in a course of conduct, or has permitted to exist a set of circumstances, that, in its natural and foreseeable consequences, proximately caused the hurt, inconvenience, or damage complained about").[1]

---

[1] The Yeagers argue that ADS Mobile assumed a duty through the Operations Plan it submitted to the Alabama Department of Public Health to ensure that third-party trucks entering the transfer station used tarps to cover their loads. Nothing in the Operations Plan could reasonably be read to support that argument.  The plan merely noted that trucks and trailers carrying garbage into or out of the facility "are required to have their loads tarped"—a requirement

14                    Opinion of the Court                    22-10789

## B.

Although the district court erred in entering summary judgment on the Yeagers' Alabama nuisance claim, it did not err in limiting the damages recoverable for that claim. For example, the Yeagers contend that their property has diminished in value because of the transfer station, but they failed to produce evidence of such damages. Mrs. Yeager testified that their property should be worth $280,000, and both plaintiffs testified that they believed that the transfer station negatively impacted the actual value of their home, but neither of them was able to even estimate the market value of their property with the transfer station in operation.[2] "The jury's assessment of damages cannot be based on speculation or conjecture," though nominal damages may be awarded where injury is shown but no measurable losses can be proved. *Swedenberg v. Phillips*, 562 So. 2d 170, 172 (Ala. 1990) (citation omitted); *Skipper v. S. Cent. Bell Tel. Co.*, 334 So. 2d 863, 866 (Ala. 1976); *see also Benson v. Vick*, 460 So. 2d 1309, 1312–13 (Ala. Civ. App. 1984) ("if a cause of action is proved, the plaintiff is entitled, as a minimum, to nominal damages; and if the evidence shows more, assessment enters the field of compensatory damages").

---

provided by the state board of health. *See* Ala. Admin. Code r. 420-3-5-.11(3)(c)8 (2017). The plan did not represent that ADS Mobile would enforce the state regulation.

[2] In Alabama, the "general rule is that the owner of real estate is competent to testify as to its value." *Alabama Power Co. v. Cummings*, 466 So. 2d 99, 102–03 (Ala. 1985).

The district court also granted summary judgment in favor of the defendants on the Yeagers' claim for damages for mental anguish. *See Gregath v. Bates*, 359 So. 2d 404, 409 (Ala. Civ. App. 1978) ("mental suffering alone, when not accompanied by malice, insult, or inhumanity or a physical injury, is not an element of damages for a nuisance"). Although the Yeagers make passing references to their claim that they suffered mental anguish as a result of the transfer station's operations, they do not meaningfully challenge the district court's decision in this regard. "We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).

## C.

The Yeagers have also abandoned the other claims in their complaint. The district court noted that the Yeagers did not respond to the defendants' motions for summary judgment on their claims for negligence, wanton conduct, punitive damages, or injunctive relief. They also failed to respond to ADS Alabama's motion for summary judgment on any claim against it, or to respond in any meaningful way to Mr. Bult's motion for summary judgment. They therefore abandoned those claims in the district court. *See Resol. Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

As to ADS Mobile, the Yeagers have not contested the defendant's argument that the transfer station is not a nuisance per

se, or that ADS Mobile is not liable for any nuisance associated with the transfer station after its sale in October 2020. And to the extent that they raised an independent claim in the district court based on ADS Mobile's alleged violation of state regulations requiring a 500-foot buffer zone between a transfer station and any residence, they have not pursued that claim on appeal.[3] Those arguments too are deemed abandoned. *See Sapuppo*, 739 F.3d at 681.

## IV.

The Yeagers presented sufficient evidence to raise a genuine issue of material fact regarding their claim that ADS Mobile's operation of the transfer station across the street from them constituted a nuisance based on noise, odors, and seagulls that interfered with the Yeagers' use and enjoyment of their property. We therefore vacate the district court's summary judgment order in this respect and remand for further proceedings consistent with this opinion. We otherwise affirm the district court's judgment as discussed above.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

---

[3] The Yeagers appear to believe that the alleged buffer-zone violation has some significance for their nuisance claim, but they do not offer any coherent explanation of that significance on appeal.