[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 05-10835

_____

D. C. Docket No. 04-01104-CV-J-S

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 10, 2006
THOMAS K. KAHN
CLERK

IMAGING BUSINESS MACHINES, LLC.,

Plaintiff-Appellant,

versus

BANCTEC, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(August 10, 2006)**

Before TJOFLAT and PRYOR, Circuit Judges, and GEORGE[*], District Judge.

GEORGE, District Judge:

Imaging Business Machines, LLC, produces high-speed document scanners.

It alleges that Banctec, Inc. developed a competitive high-speed document scanner

_____

[*]Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

by copying trade secrets and confidential features of an Imaging Business Machines' scanner.

The district court orally denied Imaging Business Machine's motion for a preliminary injunction, finding a lack of evidence of damages. In so finding, the district court expressly discounted evidence that two customers purchased the infringing BancTec scanner rather than a newer model of Imaging Business Machines' scanner. In a written amendment, the district court further reasoned that Imaging Business Machines failed to show BancTec copied features that were trade secrets. Subsequently, the district court specifically limited discovery of damages to the scanner model that BancTec copied. The district court then granted BancTec's motion for summary judgment for essentially the same reasons that it denied the preliminary injunction. Imaging Business Machines appeals the grant of summary judgment.[1] We have jurisdiction pursuant to 28 U.S.C. §1291 and reverse the grant of summary judgment.

---

[1] Imaging Business Machines also appeals the denial of its motion for a preliminary injunction and the district court's order limiting discovery. Though the issue is close, we summarily find that the district court did not abuse its discretion in denying the preliminary injunction. By contrast, the district court plainly abused its discretion in limiting discovery.

# I

In 1994, Imaging Business Machines began marketing the ImageTrac I, a high-speed, high-volume color document scanner.[2] Several years later, the company introduced the ImageTrac II to market, which model was both quicker and had a better camera. During this time, BancTec began marketing its own high-speed scanners, the S-Series. In general, however, the two product lines did not compete with each other. Indeed, BancTec's foreign subsidiaries purchased ImageTrac scanners for resale, which Imaging Business Machines re-labeled as BancTec scanners for the foreign subsidiaries.

On March 15, 2000, Imaging Business Machines and BancTec entered into a two-year Reseller Agreement. The agreement required BancTec to refrain from copying or reverse engineering Imaging Business Machines' products. The reseller relationship between the two companies continued after March 2002. During 2002 and 2003, BancTec began development of a scanner that would directly compete with the ImageTrac scanners. BancTec developed its scanner by copying mechanical features of the ImageTrac II.

---

[2] Given the posture in which this matter comes before this panel, the facts we set forth are those most favorable to Imaging Business Machines.

When Imaging Business Machines asked BancTec whether it was developing a scanner to compete with the ImageTrac scanners, BancTec falsely stated that it was not developing such a scanner. BancTec introduced its scanner to the market as the DocuScan 9000 in March 2004.

During the same time that BancTec developed the DocuScan 9000, Imaging Business Machines developed and introduced two updated versions of its ImageTrac scanners: the ImageTrac III and IV. The primary difference between the ImageTrac II and IV is that the latter has a higher speed camera that allows the scanner to run faster. Otherwise, the ImageTrac IV generally uses the same mechanical components of the ImageTrac II that BancTec copied and used to develop the DocuScan 9000.

BancTec has sold at least eleven DocuScan 9000s since its introduction. As to at least two of those sales, the customer purchased the DocuScan 9000 rather than an ImageTrac IV. Imaging Business Machines, however, did not offer evidence that the DocuScan 9000 specifically competed against an ImageTrac II for any particular sale, or that any customer purchased a DocuScan 9000 rather than an ImageTrac II.

**II**

"We review the district court's grant of summary judgment de novo, applying the same legal standards that bound the district court, and viewing all facts and reasonable inferences in the light most favorable to the nonmoving party." *Cruz v. Publix Super Mkts., Inc.*, 428 F.3d 1379, 1382 (11th Cir.2005) (internal quotes and emphasis omitted).  A grant of summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

## III

We begin by examining whether summary judgment was appropriately granted as to Imaging Business Machines' claim for fraud because it failed to offer evidence supporting the element of injury.[3]  In its motion for summary judgment,

---

[3]        The element of injury is also often referenced as the element of damage.  The district court, however, granted summary judgment based solely on its finding that Imaging Business Machines' failed to show damages rather than damage.  As noted by the Alabama Supreme Court: "damage" (in the singular) refers to the loss or injury sustained by a plaintiff while "damages" (in the plural) refers to "'a pecuniary compensation' for an injury or loss." *Boswell v. Liberty Nat. Life Ins. Co.*, 643 So.2d 580, 584 (Ala. 1994).

We recognize that the failure to offer evidence of damages may, in some circumstances, amount to a failure to offer evidence of an injury.  *See*, *Mobile Building and Loan Ass'n v. Odom*, 232 Ala. 19, 166 So. 698 (Ala. 1936).  This, however, is not necessarily always true.  For example, in *Maring-Crawford Motor Co. v. Smith*, 285 Ala. 477, 233 So.2d 484 (Ala. 1970), the plaintiff sued the defendant for fraudulently selling her a used vehicle as if it was new.  At trial, the plaintiff failed to establish her damages because she did not offer evidence of the value of the car if it had been new.  Nevertheless, she had established that she suffered an injury since a jury

BancTec attacked Imaging Business Machines' claim for fraud solely on the basis that the plaintiff was not injured.  We conclude that BancTec never met its initial burden on summary judgment.

In Alabama, a party who commits a wrongful act is responsible for the injuries that the wrongful act causes to another.  "It is well established by many decisions in [Alabama] that persons who perpetrate torts are, as a rule, responsible for the consequences of the wrongs they commit.  That is, unless the tort be the proximate cause of the injury complained of, there is no legal accountability." *Louisville & N.R. Co. v. Maddox,* 236 Ala. 594, 183 So. 849, 852 (Ala. 1938).

> Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred.  The requirement of foreseeability is imposed to preclude a finding of liability when the defendant's conduct was part of the causal chain of events leading to the injury but the resulting injury could not have been reasonably anticipated by the defendant.  Foreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence could have been anticipated.

could reasonably infer that a used car is less valuable than a new car. *Id.,* at 492.  The plaintiff's failure to show damages (ie, the pecuniary difference in value between the new and used vehicle) merely precluded an award of compensatory damages for her injury. *Id.*  She could however, recover nominal damages for that injury as Alabama permits an award of nominal damages for a claim of fraud where the plaintiff has established a breach of legal duty but has either not suffered damages or failed to prove damages. *Id.*  Accordingly, a finding that a plaintiff failed to offer evidence of damages does not, standing alone, permit the grant of summary judgment for failure to offer evidence of an injury.

*Thetford v. City of Clanton*, 605 So.2d 835, 840 (Ala. 1992). In the context of a motion for summary judgment arguing a lack of injury, the defendant's initial burden is to show that a plaintiff lacks evidence regarding each injury alleged to be proximately caused by its wrong.

In this case, Imaging Business Machines alleged in its complaint that it continued to sell scanners to BancTec in reliance on the fraudulent representation that the latter was not developing a competing scanner. This allegation--that Imaging Business Machines lost the economic opportunity of altering its relationship with BancTec from reseller to future competitor--was plainly a sufficient allegation of an injury. Although BancTec correctly recited this allegation of injury in its motion, it nevertheless relied upon the district court's finding (first stated in the oral ruling denying the motion for a preliminary injunction) that Imaging Business Machines failed to show a loss of customers. The district court's finding regarding lost customers, however, was irrelevant to whether Imaging Business Machines lost the economic opportunity of altering its business relationship with BancTec. Further, BancTec did not offer any other argument suggesting that Imaging Business Machines could not offer evidence of the injury alleged in the complaint. Accordingly, BancTec did not meet its initial

burden on summary judgment and the burden never shifted to Imaging Business Machines to offer evidence of its injury resulting from the alleged fraud.

Although the burden never shifted to Imaging Business Machines to offer evidence that it suffered an injury, we note that it nevertheless offered sufficient evidence of several injuries proximately caused by the fraud to preclude a grant of summary judgment. First, Imaging Business Machines submitted the affidavit of its president, Gary Murphy, that the corporation would have ceased selling scanners to BancTec, thus limiting the latter's access to the market, if the latter had truthfully stated that it was developing a competing scanner. A fact-finder could readily infer that a manufacturer is injured when it loses an opportunity to timely react to a reseller's plans to become a competitor. Thus, Murphy's affidavit was sufficient evidence to create a triable issue of fact whether Imaging Business Machines' suffered the injury specifically alleged in the complaint.

Second, as recognized by the district court, Imaging Business Machines offered evidence that it lost two sales to BancTec's DocuScan 9000. Plainly the loss of a sale is an injury. The district court, however, summarily discounted this evidence (in its order denying the preliminary injunction) solely because the sales involved the ImageTrac IV rather than the ImageTrac II. The injured party, however, is not the ImageTrac II but is Imaging Business Machines. Thus, the

8

relevant query is not limited to whether BancTec's conduct proximately caused injury to sales of the ImageTrac II, but whether that conduct proximately caused injury to Imaging Business Machines. In light of the record established below, whether BancTec's fraudulent representation proximately caused the loss of the two sales of the ImageTrac IV is an issue to be resolved by the fact-finder. Accordingly, the district court's grant of summary judgment as to Imaging Business Machines' claim for fraud was in error.

## IV

In moving for summary judgment, BancTec attacked the element of injury only as to Imaging Business Machines' claim for fraud. Thus, the district court's grant of summary judgment for failure to show injury as to the remaining claims was *sua sponte*. In so granting summary judgment, however, the district court procedurally erred by failing to give proper notice to Imaging Business Machines. "[A] district court may enter summary judgment sua sponte if the parties are given adequate notice that they must present all of their evidence." *Flood v. Young Woman's Christian Ass'n of Brunswick, Georgia, Inc.*, 398 F.3d 1261, 1267 (11th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Consistent with the importance of the procedural protection afforded by Rule 56(c), courts have strictly enforced the requirement

that a party threatened by summary judgment must receive notice and an opportunity to respond." *Massey v. Congress Life Ins. Co*. 116 F.3d 1414, 1417 (11th Cir. 1997). The mandatory character of this notice also applies to a district court's sua sponte consideration of summary judgment. *Id.*

BancTec's motion for summary judgment only raised the issue of injury as to Imaging Business Machine's claim for fraud. Imaging Business Machines responded on the issue of damage only as it pertained to its claim of fraud. Thus, the district court's consideration of the element of damage as to the remaining claims was sua sponte. As the district court did not comply with Rule 56(c), failing to notify Imaging Business Machines that it would be considering the issue of injury as to each of the remaining claims, the grant of summary judgment on the issue of injury as to these claims was procedurally improper and must be vacated.

## V

Finally, we consider the district court's grant of summary judgment as to whether the information that BancTec appropriated from the ImageTrac II constituted a trade secret or confidence. In granting summary judgment, the district court ruled that it "has already found that the misappropriation of trade secret claim <u>must fail as a matter of law</u> . . . ." The district court then referenced

10

its written amendment to the oral order denying Imaging Business Machines'

motion for a preliminary injunction.

"[A] district court may grant preliminary injunctive relief when the moving

party shows that: (1) it has a substantial likelihood of success on the merits of the

underlying case when the case is ultimately tried; (2) irreparable injury during the

pendency of the suit will be suffered unless the injunction issues immediately; (3)

the threatened injury to the movant outweighs whatever damage the proposed

injunction may cause the opposing party; and (4) if issued, the injunction would

not be adverse to the public interest." *Alabama v. U.S. Army Corps of Eng'rs*, 424

F.3d 1117, 1128 (11th Cir. 2005). The district court applied the first of these

factors--that the moving party show a substantial likelihood of success on the

merits--to assess the evidence whether Imaging Business Machines had a trade

secret in the components of its ImageTrac II scanner.

In contrast to the four-factor test applied on a motion for preliminary

injunction, a motion for summary judgment requires the moving party to show the

absence of any genuine issues of fact. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets its initial burden

on summary judgment, the non-moving party must submit facts showing a genuine

issue of material fact. Fed. R. Civ. Pro. 56(e). As summary judgment allows a

court "to isolate and dispose of factually unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court resolves any dispute in the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

Plainly, Imaging Business Machines bore a significantly different burden in moving for preliminary injunction than it bore in opposing BancTec's motion for summary judgment. Further, and significantly, in resolving each of these motions, the district court was required to apply a substantially different standard in reviewing the evidence and resolving contested issues. In considering the motion for preliminary injunction, the district court could assess the likelihood that Imaging Business Machines' evidence would be persuasive to a fact-finder in light of BancTec's evidence. In resolving whether Imaging Business Machines would likely succeed on the merits, the district court could consider the credibility of witnesses and was not limited to resolving any disputed issues of fact in the light most favorable to Imaging Business Machines. The written amendment to the oral order denying a preliminary injunction indicates that the district court resolved the issue of whether Imaging Business Machines had a trade secret based on the strength and persuasiveness of BancTec's evidence, apparently discounting the contrary evidence presented by Imaging Business Machines.

In considering the motion for summary judgment, however, the district court had a duty to construe the evidence presented to it in the light most favorable to Imaging Business Machines, resolving any contested issue of fact in favor of Imaging Business Machines. The written amendment to the order denying the preliminary injunction, however, lacks any language suggesting that the district court applied this summary judgment standard to the evidence underlying BancTec's motion for summary judgment. Rather, the language of the written amendment to the order denying the preliminary injunction establishes the contrary; the district court discounted Imaging Business Machines' evidence, weighed it against evidence submitted by BancTec, and largely adopted BancTec's evidence in finding that Imaging Business was unlikely to succeed on the merits of whether it had trade secrets. The district court's order granting summary judgment lacks any indication that the district court reconsidered the evidence pursuant to the appropriate summary judgment standard. Rather, the record before this court establishes that, in granting summary judgment, the district court relied solely upon its prior finding that Imaging Business Machines lacked a trade secret, which finding was not the result of resolving all disputes and drawing all inferences in the light most favorable to Imaging Business Machines. Accordingly, the grant of

summary judgment must be reversed on the issue of whether the information appropriated by BancTec was a trade secret or otherwise confidential.

We would also note that, in light of the record before us, application of the appropriate summary judgment standard would require the denial of BancTec's motion for summary judgment on the issue of whether Imaging Business Machines had a protectible trade secret or otherwise confidential information. Construing disputed issues of fact in the light most favorable to Imaging Business Machines, the record raises genuine issues of material fact whether the information was generally known and whether the information was readily ascertained from publicly available information. A particularly acute issue of fact remains as to whether Imaging Business Machines' integration of the various individual mechanical elements into a single device constituted a trade secret. A genuine issue of fact also remains as to whether Imaging Business Machines made reasonable efforts to maintain the secrecy of its information.

## VI

Accordingly, we conclude that the district court erred in granting the motion for summary judgment.

**REVERSED in part, AFFIRMED in part, and REMANDED.**