FILED
United States Court of Appeals
Tenth Circuit

November 13, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

R. KIMBALL MOSIER, in his
capacity as Chapter 11 Trustee of
National School Fitness Foundation;
SCHOOL FITNESS SYSTEMS, LLC,

   Plaintiffs - Appellants,

v.

CALLISTER, NEBEKER &
MCCULLOUGH, a professional
corporation; LELAND S.
MCCULLOUGH; BRADLEY E.
MORRIS,

   Defendants - Appellees.

No. 07-4238

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D. Ct. No. 2:06-CV-00677-TS)**

George B. Hoffmann, Parsons Kinghorn Harris, Salt Lake City, Utah (James E.
Morton, S. Brook Millard, and Christopher J. Rogers, Morton and Millard, PLLC,
Salt Lake City, Utah, on the briefs), appearing for Appellants.

Jefferson W. Gross (Richard D. Burbidge, with him on the brief), Burbidge
Mitchell & Gross, Salt Lake City, Utah, appearing for Appellees.

Before **TACHA** and **HARTZ**, Circuit Judges, and **DEGIUSTI,**[*] District Judge

_____

**TACHA,** Circuit Judge.

_____

Plaintiff-Appellant R. Kimball Mosier is the trustee ("Trustee") of the bankruptcy estate of the National School Fitness Foundation ("NSFF"), a not-for-profit corporation that sold physical fitness equipment and programs to school districts across the United States prior to filing for bankruptcy in 2004. Defendants-Appellees are the law firm of Callister, Nebeker, & McCullough, and two of the firm's attorneys, Bradley E. Morris and Leland S. McCullough (collectively, "CNM"). The Trustee filed this suit against CNM for professional negligence, breach of fiduciary duty, vicarious liability, breach of the covenant of good faith and fair dealing, fraud, and civil conspiracy. The Trustee alleged that CNM failed to advise NSFF that it was operating unlawfully and failed to disclose certain conflicts of interest inherent in its representation of NSFF. The district court granted summary judgment in favor of CNM under the doctrine of _in pari delicto_,[1] holding that the wrongdoing of NSFF was far greater than any wrongdoing of CNM. We have jurisdiction under 28 U.S.C. § 1291, and

_____

[*]Honorable Timothy D. DeGiusti, District Judge for the Western District of Oklahoma, sitting by designation.

[1]This doctrine represents the principle "that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." _Black's Law Dictionary_ 806 (8th ed. 2004).

-2-

we AFFIRM.

## I. BACKGROUND

In April 2000, NSFF was organized as a Utah not-for-profit corporation. It held itself out as a charitable organization that provided physical fitness programs, including fitness equipment and a curriculum, to schools throughout the United States. It also applied to the IRS for designation as a § 501(c)(3) tax-exempt entity.

From July 2001 through April 2004, NSFF utilized a business model called the "Leasing Model." This model generally worked as follows: (1) NSFF solicited schools to purchase its physical fitness programs; (2) interested schools were directed to enter into a sales contract with a for-profit company organized by NSFF's principals, called School Fitness Systems, LLC ("SFS"); (3) the schools paid SFS directly and financed the purchase by obtaining a three-year, non-recourse lease from an institutional lender; (4) NSFF entered into a "contribution agreement" with each school through which NSFF contracted to make monthly payments to the school in an amount equal to the monthly lease obligation the school owed to its institutional lender; (5) after receiving payment from the schools, SFS kicked back approximately 50% of those proceeds to NSFF; (6) NSFF agreed to repay the schools the full purchase price for the physical fitness program over the course of the three-year lease and advertised the program as "free" to the schools.

Each contribution agreement stated, either expressly or implicitly, that the source of NSFF's monthly payments to the schools would derive from charitable contributions or government grants. NSFF, however, never received charitable contributions or government grants in any appreciable amount. Instead, it paid nearly all of its monthly obligations under its contribution agreements from proceeds it received from sales of physical fitness programs to other schools. Under its Leasing Model, NSFF was therefore operating a fraudulent "Ponzi" scheme.[2] Because it never had sufficient assets, grants, or charitable contributions to meet its obligations to the schools, and because the stream of revenue from SFS's sales to new schools was insufficient to fund NSFF's continuing obligations to previously solicited schools, NSFF incurred a mounting, unfunded liability that eventually led to its insolvency and petition for bankruptcy on June 1, 2004.

The law firm of Ray, Quinney, & Nebeker ("RQN") represented NSFF from the inception of the Leasing Model until November 2003. During this period, NSFF affirmed to RQN that it was either receiving—or was confident it would soon be receiving—substantial government or charitable funding. As it

---

[2]A Ponzi scheme is "[a] fraudulent investment scheme in which money contributed by later investors generates artificially high dividends for the original investors, whose example attracts even larger investments. Money from the new investors is used directly to repay or pay interest to earlier investors, usually without any operation or revenue-producing activity other than the continual raising of new funds." *Black's Law Dictionary* 1198 (8th ed. 2004).

became clear to RQN that NSFF was having difficulty raising funds, RQN repeatedly warned NSFF that unless it obtained substantial contributions or grant monies, it risked losing its tax-exempt status and would be susceptible to civil and criminal penalties.

In an August 2002 letter to Cameron Lewis, NSFF's chief executive officer, RQN specifically advised NSFF that if at any time it became substantially likely that NSFF would be unable to meet its financial commitments under its contracts with the schools, it should cease its operations immediately and pay off as many of its obligations as possible, rather than expose itself to liability for fraudulent misrepresentations and for operating a Ponzi scheme. During the subsequent fourteen months, RQN repeated this message to NSFF board members until in an October 2003 letter to J. Tyrone ("Ty") Lewis, NSFF's chairman of the board, it counseled NSFF to immediately discontinue enrolling new schools in its fitness program and to pay as many of its financial obligations as it could. RQN again relayed that advice to NSFF during a November 2003 board meeting attended by Cameron and Ty Lewis and seven other directors and officers. NSFF responded by ignoring this counsel, terminating its relationship with RQN, and continuing to solicit its fitness program to more and more schools, even as it careened toward inevitable ruin.

Shortly thereafter, NSFF sought CNM's counsel regarding its tax-exempt status. CNM's representation of NSFF was relatively brief and somewhat limited.

-5-

It is undisputed, however, that CNM never advised NSFF to change its Leasing Model or otherwise warned NSFF of its potential liability for operating a Ponzi scheme.

After NSFF filed for bankruptcy, the Trustee filed an adversary complaint against nine of NSFF's directors and officers, including Cameron and Ty Lewis. The Trustee alleged that those directors and officers did not heed the advice provided by NSFF's legal counsel and had made numerous misrepresentations to schools and school districts in order to perpetuate NSFF's business operations, all to the detriment of NSFF. The parties ultimately settled, with the defendants disclaiming any liability to the Trustee. Later, however, a Minnesota federal grand jury indicted Cameron and Ty Lewis on multiple charges of fraud in connection with their operation of NSFF. A jury found them guilty of thirty-three and thirty-two felony counts respectively, including mail fraud, wire fraud, bank fraud, and money laundering.

On May 30, 2006, the Trustee filed this suit against CNM in Utah state court, alleging state-law claims of professional negligence, negligent misrepresentation, breach of fiduciary duty, vicarious liability, and breach of the covenant of good faith and fair dealing.[3] The complaint sought damages allegedly

---

[3]The same day, the Trustee filed a similar suit against RQN in Utah state court. After RQN removed the case to federal district court, the court entered summary judgment in favor of RQN based on the doctrine of *in pari delicto*. *Mosier v. Quinney*, No. 2:06-CV-519, 2007 WL 2688245, at *1 (D. Utah Sept. 11, (continued...)

-6-

incurred as a result of CNM's failure to advise NSFF that it was operating an illegal Ponzi scheme.  On January 12, 2007, after CNM had removed the case to federal district court, CNM filed four motions for summary judgment.  The first motion asserted that the doctrine of *in pari delicto* barred the Trustee's claims.  The Trustee filed its response to the motion on March 19.

After receiving leave to do so, the Trustee filed an amended complaint on April 16, 2007.  In it, the Trustee dropped the claim for negligent misrepresentation and added two new claims for fraud and civil conspiracy based on allegations that CNM subordinated NSFF's interests to those of Cameron Lewis, whom CNM purportedly represented in matters adverse to NSFF.  On June 29, in accordance with an order from the court, the Trustee filed an amended opposition to CNM's motion for summary judgment.  On October 9, 2007 the district court issued a memorandum decision and order granting CNM's motion for summary judgment under the doctrine of *in pari delicto*.  The district court ruled that "[a]s a matter of law, any wrongdoing on behalf of the Defendants was substantially less than that of NSFF.  As a result, the Trustee, standing in the shoes of NSFF, is barred from bringing this action under the doctrine of *in pari delicto*." *Mosier v. Callister, Nebeker, & McCullough*, 2:06-CV-677TS, 2007 WL 2973264, at *3 (D. Utah Oct. 9, 2007).  The Trustee appeals the order of summary

---

[3](...continued)
2007).

judgment.

## II.  STANDARD OF REVIEW

"We review the grant of a summary judgment motion de novo, applying the same standards as the district court."  *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1205 (10th Cir. 2007).  Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  We view all evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004).  We may affirm the district court's decision for any reason supported by the record.  *Amro v. Boeing Co.*, 232 F.3d 790, 796 (10th Cir. 2000).

## III.  DISCUSSION

The doctrine of *in pari delicto* "derives from the Latin, *in pari delicto potior est conditio defendentis*: In a case of equal or mutual fault . . . the position of the [defending] party . . . is the better one."  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985) (quotations omitted).  It "is grounded on two premises: first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality. "  *Id.* (footnote omitted).  The Supreme Court further explained that "the equitable defense of *in pari delicto* . . . is rooted in the common-law notion that a plaintiff's recovery

-8-

may be barred by his own wrongful conduct." *Pinter v. Dahl*, 486 U.S. 622, 632 (1988).

When that wrongful conduct is perpetrated by a debtor who subsequently files for bankruptcy, courts have held that the "defense of *in pari delicto* is available in an action by a bankruptcy trustee against another party [pursuant to 11 U.S.C. § 541(a)(1)][4] if the defense could have been raised against the debtor." *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837 (8th Cir. 2005). We, too, have explained that when a trustee asserts a claim under 11 U.S.C. § 541, as is the case here, "the trustee stands in the shoes of the debtor and can take no greater rights than the debtor himself had." *Sender v. Simon*, 84 F.3d 1299, 1305 (10th Cir. 1996) (quotations omitted).

Thus, it is well established that *in pari delicto* may bar an action by a bankruptcy trustee against third parties who participated in or facilitated wrongful conduct of the debtor. *See, e.g.*, *Grassmueck*, 402 F.3d 833, 841–42 (holding that bankruptcy trustee was barred under *in pari delicto* from bringing negligence claims against parties who facilitated the debtor's fraudulent investments when the debtor knew the investments were fraudulent); *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d

---

[4]A trustee in bankruptcy may commence two types of actions on behalf of the debtor estate: "(1) actions brought by the trustee as a successor to the debtor's interests included as property of the estate under 11 U.S.C. § 541, and (2) actions brought under one of the trustee's avoidance powers." *Sender v. Simon*, 84 F.3d 1299, 1304 (10th Cir. 1996).

-9-

147, 152 (2d Cir. 2003) (*in pari delicto* barred action against the debtor's accounting firm for breach of fiduciary duty based on its failure to disclose negative information relating to an impending merger and acquisition when the debtor was itself aware of the information); *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 357–60 (3d Cir. 2001) (*in pari delicto* barred action against the debtor's attorney and accountant, among other third parties, for their participation in the debtor's Ponzi scheme when the debtor orchestrated the scheme); *Terlecky v. Hurd (In re Dublin Sec., Inc.)*, 133 F.3d 377, 380–81 (6th Cir. 1997) (holding that a debtor who intentionally defrauded investors could not recover, based on the defense of *in pari delicto*, from lawyers who knew about but failed to apprise the debtor of the fraud); *Sender v. Buchanan (In re Hedged-Investments Assocs.)*, 84 F.3d 1281, 1284 (10th Cir. 1996) (holding that a trustee could not recover from an investor in a Ponzi scheme perpetrated by the debtor, citing "the elementary principle that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction").

In this case, the criminal convictions of NSFF's CEO, Cameron Lewis, and its chairman of the board, Ty Lewis, establish that these individuals knowingly and intentionally engaged in a scheme to defraud schools across the United States through NSFF's Leasing Model. By way of contrast, there is no evidence suggesting that CNM's conduct is as or more blameworthy than that of the

Lewises.  The evidence shows only that CNM failed to counsel NSFF to cease its operations or otherwise explain that the Leasing Model was operating as an illegal Ponzi scheme, and NSFF had received and ignored that same counsel when it was given by RQN.  The Trustee offers no evidence that CNM made fraudulent misrepresentations, participated in any form of felony conduct, or that it affirmatively counseled NSFF to continue operating in the face of financial ruin.  Thus, the district court held as a matter of law that NSFF's misconduct, as evidenced by the actions of its officers and directors, was greater than CNM's fault in failing to counsel NSFF.

On appeal, the Trustee contends that the district court improperly attributed the Lewises' misconduct to NSFF.  The Trustee recognizes the rule that the actions of corporate officers and directors are generally imputed to the corporation itself, but the Trustee maintains that the "adverse interest exception" applies in this case because the Lewises acted in their own interest rather than pursuing some advantage for NSFF.  *See, e.g., Thabault v. Chait*, 541 F.3d 512, 527 (3d Cir. 2008) ("[F]raudulent conduct will not be imputed if the officer's interests were adverse to the corporation and not for the benefit of the corporation.").  It is clear, however, that the Lewises did in fact pursue advantages for NSFF through their fraudulent activities, including illegally perpetuating NSFF's status a § 501(c)(3) tax-exempt entity.  Moreover, the Lewises were not alone in directing NSFF's misconduct.  The NSFF board

decided to continue NSFF's operations even after the November 2003 board meeting at which RQN warned seven directors and officers, in addition to the Lewises, about the impropriety of enrolling new schools in its fitness program. We therefore hold that the adverse interest exception does not apply.

The Trustee also argues that the relative fault of NSFF and CNM is a question of fact that cannot be determined at the summary judgment stage. We disagree. In this case, the underlying facts are not disputed, and no reasonable jury could conclude from those facts that CNM's conduct is more culpable than that of NSFF.[5] Thus, the district court could properly enter summary judgment in favor of CNM based on its defense of *in pari delicto*. *Cf. Coopers & Lybrand, LLP*, 322 F.3d at 164 (rejecting the argument that the issue of relative fault in an *in pari delicto* defense presents a "quintessential fact question[] for the jury" and affirming dismissal on the pleadings) (quotations omitted); *In re Dublin Sec., Inc.*, 133 F.3d at 380 (on the defendants' motion to dismiss for failure to state a claim in a case where the defendants allegedly failed to apprise the debtor that it was engaging in illegal activity, allegations that the debtor intentionally defrauded investors constitutes "purposeful conduct [that] establishes

_____

[5]On appeal, the Trustee relies on the affidavit of James Fishman to argue that CNM's conduct is more culpable than NSFF's. This affidavit, however, was not submitted as part of the Trustee's response to CNM's motion for summary judgment. Rather, it was filed three months later and without the requisite leave of court. Therefore, we do not consider it on appeal. *See Aero-Medical, Inc. v. United States*, 23 F.3d 328, 329 n.2 (10th Cir. 1994).

-12-

conclusively that the debtors were *at least* as culpable as the defendants" and therefore supports the *in pari delicto* defense as a matter of law).

We further reject the Trustee's contention that *in pari delicto* is inapplicable here because the defense will produce an inequitable result. Specifically, the Trustee contends that applying the defense against a bankruptcy trustee in an adversary proceeding shields the wrongdoing defendant at the expense of the debtor's innocent creditors. We, however, have previously rejected the argument that a trustee in bankruptcy is immune to *in pari delicto* and other defenses based on the debtor's misconduct, reasoning that § 541 gives the trustee no greater rights than the debtor would have had if it had instituted the action. *See In re Hedged-Investments Assocs.*, 84 F.3d at 1284–86. Other courts have reached the same conclusion. *See Grassmueck*, 402 F.3d at 836 ("[T]he equitable defense of *in pari delicto* is available in an action by a bankruptcy trustee against another party if the defense could have been raised against the debtor."); *R.F. Lafferty & Co., Inc.*, 267 F.3d at 355–56 (applying *in pari delicto* against a committee of creditors appointed by the bankruptcy trustee because the trustee is "subject to the same defenses as could have been asserted by the defendant had the action been instituted by the debtor"). Thus, the Trustee's argument on this point is without merit.

Finally, the Trustee makes two arguments related solely to his fraud and conspiracy claims. Those claims are based on allegations that CNM treated its

representation of NSFF as subordinate to its representation of Cameron and Ty Lewis. In particular, the Trustee alleges that Mr. Morris and/or Callister, Nebeker & McCullough fraudulently advised NSFF to pay the Lewises and others nearly two million dollars to which they were not entitled. On appeal from the district court's entry of summary judgment against the Trustee on these claims, the Trustee first argues that the doctrine of *in pari delicto* does not apply because NSFF is an innocent victim of CNM's intentional and fraudulent conduct. But even assuming that *in pari delicto* would not stand as a bar in such a case, the Trustee has not pointed to any evidence that supports his allegations. In his response to CNM's motion for summary judgment, the Trustee cited testimony from Mr. Morris's deposition that Mr. Morris had previously represented Cameron Lewis. The timing and extent of the representation is not clear from the portion of the deposition included in the record. The Trustee further cited to the depositions of two former NSFF employees, both of whom testified that they knew Mr. Morris had previously represented Cameron Lewis, and one of whom testified that Mr. Morris disclosed the conflict of interest and that NSFF retained other counsel to represent it in dealings involving Mr. Lewis.

The Trustee cites only to statements in his own affidavit to support his allegations that CNM's representation of Cameron and/or Ty Lewis amounted to a fraud on NSFF and resulted in NSFF paying out millions of dollars to the Lewises and others. The Trustee's own statements, however, are not based on personal

knowledge of the events in question and thus do not create a material issue of fact with respect to his fraud and civil conspiracy claims. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (explaining that at the summary judgment stage, "the nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient" to create a genuine issue of material fact). Therefore, because the Trustee did not present evidence from which a reasonable jury could find for him on those claims, summary judgment was proper even without application of the *in pari delicto* defense. *See Amro*, 232 F.3d at 796 (noting that we may affirm the district court's decision for any reason supported by the record).

In his second point regarding the fraud and civil conspiracy claims, the Trustee argues that he did not have notice that those claims were subject to CNM's motion for summary judgment. The Trustee contends that because CNM filed its motion for summary judgment approximately three months before he amended his complaint to add the fraud and civil conspiracy claims, the district court should have notified him that it was considering CNM's motion as to all of the Trustee's claims—including the newly-added claims. It is clear from the record, however, that the Trustee had such notice as well as an opportunity to present arguments and evidence against the motion. Although the Trustee initially filed his response to CNM's summary judgment motion before he amended his complaint, he was later permitted to file an amended response two

months after the amended complaint. In addition, CNM's reply memorandum clearly asserted that there was no evidence supporting the Trustee's claims of fraud and civil conspiracy. Approximately three months later, the district court issued its order. At no time during that three-month period did the Trustee seek leave of court to file a surreply to argue that summary judgment was inappropriate as to the fraud and conspiracy claims. Thus, it is clear that the Trustee had notice that the issue was under consideration and was given the opportunity to be heard on it.

## IV. CONCLUSION

The district court held that NSFF's fault in making fraudulent misrepresentations to schools and in conducting an illegal Ponzi scheme was greater than the fault of CNM. In so holding, the district court did not err by imputing the conduct of the Lewises to CNM, by applying the doctrine of *in pari delicto* as a matter of law, or by applying the doctrine against a trustee in bankruptcy. We therefore AFFIRM the district court's decision to grant CNM's motion for summary judgment based on the *in pari delicto* doctrine.