In re Richard LELI, Jr., d/b/a RL Homes, Debtor(s)

Diane L. Jensen, as the Chapter 7 Trustee for Richard Leli, Jr. d/b/a RL Homes, Plaintiff

v.

Cardillo, Keith & Bonaquist, P.A., Christopher Marsala and Deborah Marsala, individually and as Trustees, Anthony Marino, MLB Development & Holdings, LLC, Hunters Property, LLC, Tula Enterpfuses, LLC, and Tropicana Avenue Development, LLC, Defendants.

Bankruptcy No. 9:07–bk–12154–ALP. Adversary No. 9:08–ap–090–ALP.

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

Jan. 6, 2010.

Richard Leli, Jr., Red Bank, NJ, pro se.

Diane L. Jensen, Fort Myers, FL, pro se.

Seth P. Traub, Steven M. Berman, Shumaker Loop & Kendrick, LLP, Cynthia Burnette, United States Trustee, Tampa, FL, for Trustee.

## ORDER ON DEFENDANTS, CARDILLO, KEITH & BONAQUIST, P.A. AND CHRISTOPHER MARSALA'S, AMENDED MOTION FOR SUMMARY JUDGMENT (DOC. NO. 171)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in the above-captioned Adversary Proceeding in the case of Richard Leli, Jr., d/b/a RL HOMES (the Debtor), is an Amended Motion for Summary Judgment and Memorandum of Law (Doc. No. 171), filed by Cardillo, Keith and Bonaquist P.A. (CKB) and Christopher Marsala (Marsala) (the Defendants). This Adversary Proceeding was filed by Diane L. Jensen, the Chapter

Trustee (Trustee) for the estate of the Debtor.

The Motion is filed by the Defendants who contend that there are no genuine issues of material fact and (1) that the Trustee's causes of action against them are subject to summary judgment as a matter of law based on the doctrine of *in pari delicto,* and (2) the Trustee's claims are subject to summary judgment because the Trustee does not have standing to assert causes of action seeking damages that were not incurred by the Debtor.

In her 29–page Amended Complaint, the Trustee set forth eleven distinct claims in eleven separate Counts. On December 10, 2009, this Court entered its Order on Defendants, Cardillo, Keith & Bonaquist, P.A.; Christopher Marsala's Motion for Partial Summary Judgment (Doc. No. 232) and dismissed the claims set forth in Counts IV, V and VI of the Amended Complaint. Therefore, this Court shall not address those Counts in this Order.

The Trustee alleges the following in the Counts remaining:

Count I—Professional Liability/Professional Negligence (Marsala and the Firm)

Count II—Breach of Fiduciary Duty (Marsala and the Firm)

Count III—Aiding and Abetting Breach of Fiduciary Duty (Marsala and the Firm)

Count VIII—Avoidance of Preferential Transfers (11 U.S.C. § 547) (MLB and Tropicana)

Count IX—Avoidance of Fraudulent Transfers (11 U.S.C. § 548(a)(1)(A)) (MLB and Tropicana)

Count X—Avoidance of Fraudulent Transfers (11 U.S.C. § 548(a)(1)(B)) (MLB and Tropicana)

Count XI—Recovery of Avoided Transfer (11 U.S.C. § 550) (Marsala, Wife, Marino, MLB, Hunters, Tula, and Tropicana)

This Motion for Summary Judgment was duly scheduled for hearing, among other matters, at which time this Court considered the record and heard argument of counsel for the respective parties. In order to put the issues raised by the parties involved in perspective, a brief review of the history of this Chapter 7 case should be helpful.

Richard Leli, Jr., the Debtor, was originally from New Jersey and owned several companies engaged in the home construction business (Dep. Of Richard Leli 3/3/2009 8:20–25; 9:15–25; 10:1–15). The Debtor moved to Naples, Florida, and opened a construction company under the trade name of RL Homes. His original intention was to build homes for various clients on some properties he already owned in the area. He planned to build approximately ten homes per year. RL Homes started as a sole proprietorship, but in 2004 the Debtor incorporated the business under the name of Richard Leli Homes, Inc.

Christopher Marsala is an attorney and was employed by the law firm of Cardillo, Keith and Bonaquist. Marsala first became acquainted with the Debtor in a professional capacity when he represented the closing agent in the closing of Leli's home in July of 2004. Thereafter, Marsala began to provide legal services to the Debtor.

In 2005, Marsala became involved with the Debtor in several investments. Marsala and Leli and their wives placed a five acre parcel of property located on Hunter's Road in Naples, Florida, under contract. Shortly thereafter, Marsala and the Debtor joined with a man named Regis Bobitski to form an entity called MLB Development and Holdings, LLC. (MLB) (Pl.'s Compl. 29.) Shortly after its forma-

tion, Bobitski left MLB, and Marsala and Leli each held 50 % of the equity in MLB. Marsala served as the managing member and the Debtor served as President of MLB. It is without dispute that Marsala drafted all of the documents involved with the formation of MLB, which involved acquisition and transfer of title to various properties owned by MLB.

MLB was formed for the purpose of acquiring and developing certain parcels of real properties. To accomplish this goal, a five acre parcel located on Hunter's Road was purchased and the ownership transferred to MLB. MLB also acquired a ten acre parcel located near the five acre parcel.

In June of 2005, Marsala and the Debtor purchased additional parcels of property located in Estero, Florida, (the Tropicana Parcels). The property was purchased to be held for speculation. Marsala owned 2/3rd interest and the Debtor owned 1/3rd interest in the Tropicana Parcels.

During the life of Leli, Inc., as a business entity, the corporation entered into several construction contracts involving close to 200 homes with nearly 100 customers. Leli, Inc., however, either failed to commence or complete construction of 141 of the contracted homes, and he was unable to refund the deposits to the purchasers.

As a result of several complaints received, the Office of the Attorney General of Florida conducted an investigation of Leli and Leli, Inc., charging violation of the Florida Deceptive and Unfair Trade Practices Act (Chapter 501, Fla. Stat.). Both the Debtor and Leli, Inc., entered into a Consent Decree with the Attorney General with respect to the deceptive and unfair trade practices charges. Pursuant to the terms of the Consent Decree, the Debtor and Leli, Inc., consented to a judgment against them, and agreed not to engage in any business activity in Florida that involved the acceptance of deposits or construction of buildings. They also consented to the entry of a money judgment against them in the amount of $1,625,075.00 representing the damages on behalf of 85 separate consumers on 102 different contracts. (Dep. Of Richard Leli 3/4/2009).

By late 2005 and the beginning of 2006, both the Debtor and his corporation were in a serious financial bind. The Debtor was not able to meet his obligations concerning property investments. He became unable to make monthly contributions on the MLB properties.

The record is silent whether it was the idea of Marsala or of the Debtor to enter into an agreement. It is clear, however, that the documentation was drafted by Marsala and there is no dispute that Marsala and the Debtor entered into a Withdrawal and Resignation Agreement (the Agreement) in which Leli transferred his interests in MLB to Marsala in exchange for being relieved of any further obligation for the mortgages on the properties held by MLB. There is no evidence in this record that the Agreement covered the Debtor's liability and obligation owed by the Debtor to the mortgagee.

Another transaction involved in this law suit relates to the Debtor's interest in the Tropicana Parcels, in which Marsala owned 2/3rd interest and the Debtor owned 1/3rd interest. Marsala prepared all the documents necessary to effectuate the transfer of Leli's interest in the property to Anthony Marino, ostensibly for the purpose of providing the Debtor with more capital.

It appears that, again, the record is unclear whose idea it was to transfer the Debtor's interest in Tropicana to Marino, nor is there anything in this record to

show who was to furnish more capital to the Debtor. It appears that the Debtor did not receive any consideration in exchange for transferring his 1/3rd interest in the Tropicana Parcels.

To effectuate this transfer of ownership, the Tropicana Parcels were transferred to an entity called Tropicana Ave. Development, LLC, in which Leli had no interest. Marino obtained a 1/3rd ownership interest in Tropicana before that interest was assigned to another entity.

At this point, approximately one year after Leli divested himself of his interests in the Tropicana Parcels, it is almost anticlimactic that the Debtor sought relief in the Bankruptcy Court. He filed his Voluntary Petition, not in. Florida, but in the United States Bankruptcy Court for the District of New Jersey, although he resided in and operated his business in Florida since 2003.

The Motion to transfer the case to the Middle District of Florida was promptly granted and the Chapter 7 case was transferred to the Fort Myers Division. In due course, Ms. Diane Jensen was appointed as Trustee for the Estate of the Debtor. Ms. Jensen, with this Court's approval, engaged the services of Mr. Steve Berman as her counsel of record.

As noted above, in their Motion for Summary Judgment, the Defendants contend that the Plaintiff's claims are barred by the Doctrine of *in pari delicto*. They contend that *in pari delicto* applies because the Debtor bears at least substantially equal fault for the wrong he seeks to redress. Consideration of public policy does not bar the application of the defense of in pari delicto in this case.

The Defendants also contend that the Trustee lacks standing to bring these claims because the record evidence clearly shows that the Debtor, in fact, suffered no injury caused by Marsala and CKB.

Although the Trustee did not file a formal response to this Amended Motion for Summary Judgment, she did file a Notice of Filing Authorities and Citations to Undisputed Facts Related to Motions for Summary Judgment (Doc. No. 199).

### RULES GOVERNING SUMMARY JUDGMENT

Summary Judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law" *Imaging Bus. Machines, LLC v. BancTec, Inc.,* 459 F.3d 1186, 1189 (11th Cir.2006)(citing Fed.Civ.P. 56(c)). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, Rule 56(c) mandates the entry of Summary Judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hilburn v. Murata Elecs. North Am., Inc.,* 181 F.3d 1220, 1225 (11th Cir.1999). While courts may view evidence in the light most favorable to the non-movant, they need not allow a case to proceed to a jury based upon implausible inferences. *Cuesta v. School Board of Miami–Dade County,* 285 F.3d 962, 970 (11th Cir.2002).

### GENERAL PRINCIPLES OF THE DOCTRINE OF *IN PARI DELICTO*

The United States Court of Appeals, Tenth Circuit, considered this Doctrine in the case of *Mosier v. Callister, Nebeker & McCullough,* 546 F.3d 1271 (10th Cir. 2008). The Tenth Circuit held that:

"(1) adverse interest exception did not apply to preclude fraudulent conduct of

debtor's principals from being imputed to debtor in determining whether *in pari delicto* doctrine applied to bar trustee's claims;

(2) district court could determine, on motion for summary judgment, that *in pari delicto* doctrine applied to bar trustee's claims; and

(3) there was no evidence supporting trustee's fraud and civil conspiracy claims."

The *Mosier* Court went on to say that:

"District court could determine, on motion for summary judgment, that *in pari delicto* doctrine applied to bar Chapter 11 trustee's claims against law firm and attorneys who had represented corporate debtor, given that underlying facts were not disputed and no reasonable jury could conclude from those facts that conduct of law firm and attorneys was more culpable than that of debtor ..."

In the *Discussion* section of the opinion, the Tenth Circuit noted that:

"The doctrine of *in pari delicto* 'derives from the Latin, *in pari delicto potior est conditio defendentis*': In a case of equal or mutual fault ... the position of the [defending] party ... is the better one." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306, 105 S.Ct. 2622, 86 L.Ed.2d 215 (1985) (quotations omitted). It "is grounded on two premises: first, that courts should not lend their good offices to mediating disputes among wrongdoers; and second, that denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality." *Id.* (footnote omitted). The Supreme Court further explained that "the equitable defense of *in pari delicto* ... is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Pinter v. Dahl*, 486 U.S. 622, 632, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988).

■ When that wrongful conduct is perpetrated by a debtor who subsequently files for bankruptcy, courts have held that the "defense of *in pari delicto* is available in an action by a bankruptcy trustee against another party [pursuant to 11 U.S.C. § 541(a)(1)] FN4 if the defense could have been raised against the debtor." *Grassmueck v. Am. Shorthorn Ass'n*, 402 F.3d 833, 837 (8th Cir. 2005). We, too, have explained that when a trustee asserts a claim under 11 U.S.C. § 541, as is the case here, "the trustee stands in the shoes of the debtor and can take no greater rights than the debtor himself had." *Sender v. Simon*, 84 F.3d 1299, 1305 (10th Cir.1996) (quotations omitted).

...

■ Thus, it is well established that *in pari delicto* may bar an action by a bankruptcy trustee against third parties who participated in or facilitated wrongful conduct of the debtor. See, e.g., *Grassmueck*, 402 F.3d 833, 841–42 (holding that bankruptcy trustee was barred under *in pari delicto* from bringing negligence claims against parties who facilitated the debtor's fraudulent investments when the debtor knew the investments were fraudulent); *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 152 (2d Cir.2003) (*in pari delicto* barred action against the debtor's accounting firm for breach of fiduciary duty based on its failure to disclose negative information relating to an impending merger and acquisition when the debtor was itself aware of the information); *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 357–60 (3d Cir.2001) (*in pari delicto* barred action against the debtor's attorney and accountant, among

other third parties, for their participation in the debtor's Ponzi scheme when the debtor orchestrated the scheme); *Terlecky v. Hurd (In re Dublin Sec., Inc.)*, 133 F.3d 377, 380–81 (6th Cir.1997) (holding that a debtor who intentionally defrauded investors could not recover, based on the defense of *in pari delicto*, from lawyers who knew about but failed to apprise the debtor of the fraud); *Sender v. Buchanan (In re Hedged–Investments Assocs.)*, 84 F.3d 1281, 1284 (10th Cir.1996) (holding that a trustee could not recover from an investor in a Ponzi scheme perpetrated by the debtor, citing "the elementary principle that one who has himself participated in a violation of law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction").

Most cases in which the defense of *in pari delicto* is raised involve cases where the Debtor corporation or partnership was engaged in running a PONZI scheme or were in violation of the Federal RICO Act. In both instances, the defenses raised were almost self-evident because the Debtor corporation was itself involved in illegal activity. Thus, the Court did not have any difficulty to impute liability to the corporate Debtor for the wrongdoing of individuals who were committing the illegal act.

■■■ It is well established that the Trustee in Bankruptcy has no greater rights than an entity who attempts to assert a claim. As the United States Court of Appeals for the Eighth Circuit noted in its opinion in *Grassmueck v. The American Shorthorn Association*, 402 F.3d 833 (8th Cir.2005)

"A trustee's ability to assert causes of action on behalf of the bankrupt estate is subject to any equitable or legal defenses that could have been raised against the debtor. 5 Collier on Bankruptcy, supra, ¶ 541.08, at 541–46. In particular, the equitable defense of in pari delicto is available in an action by a bankruptcy trustee against another party if the defense could have been raised against the debtor". See *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 355–56, 358 (3d Cir.2001); 5 *837 Collier on Bankruptcy, supra, ¶ 541.08, at 541–46 n. 11. The doctrine of in pari delicto is the "principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." Black's Law Dictionary 806 (8th ed.2004).

Our Eleventh Circuit Court of Appeals had the opportunity to consider, again, the validity of the defense of *in pari delicto* and held that the bankruptcy estate of Debtor who was engaged in a massive PONZI scheme had standing to pursue federal racketeering claims against entities that had allegedly assisted the Debtor's principal in perpetration of the scheme. The Court held that the equitable doctrine of *in pari delicto* applies with equal force to the Bankruptcy Trustee as to the Debtor outside of Bankruptcy, regardless that the trustee was barred by doctrine of *in pari delicto* from recovering on his federal racketeering claims. They also stated that:

"A bankruptcy trustee stands in the shoes of the debtor and has standing to bring any suit that the debtor could have instituted" when the debtor filed for bankruptcy, and there is no suggestion in the text of the Bankruptcy Code that the trustee acquires rights and interests greater than those of the debtor. *O'Halloran*, 350 F.3d at 1202; see also 11 U.S.C. § 362(a). "If a claim of ETS would have been subject to the defense of in pari delicto at the commencement of the bankruptcy, then the same claim,

when asserted by the trustee, is subject to the same affirmative defense."

 Considering the principles announced by the cases which have considered the doctrine of *in pari delicto,* it is evident that in the present instance they are not applicable for the following reasons:

Although there were plenty of allegations of misbehavior and inappropriate conduct of the Debtor, generally speaking which are true, what is involved in the present case is the conduct of Marsala and the conduct of the law firm CKB concerning the Debtor's transfer of his interest in MLB properties and his interest in the Tropicana Parcels. There is nothing in this record to warrant the conclusion that the Debtor was guilty of transferring his interest in the properties for the purpose of hiding that interest from his creditors.

As a matter of fact, the record is equally consistent and supports the inference that because of a dire and almost hapless financial situation of the Debtor, he was convinced by Marsala to "unload" his interest in these two entities to lessen his responsibility for the maintenance of these properties.

 It is also urged on behalf of Marsala that the complaint fails to state a viable claim because of a lack of allegations that the Debtor suffered any damages as a result of the Debtor's divestiture of his interest in the MLB properties and Tropicana Parcels. The quantum of damages suffered as a result of the transfers by the Debtor of his interest in properties is not relevant because the damages sought to be recovered by the Trustee are damages suffered by the estate of the Debtor and is something that has to be determined by proof at a trial and is not subject to decision by Summary Judgment on that issue.

For the reasons stated above, this Court is satisfied that the defense of *in pari delicto* concerning these two transfers is not available to Marsala or the law firm of CKB. The Motion for Summary Judgment as to Marsala should be denied since his intimate involvement in the dealings with the Debtor were so pervasive that it would not permit the defense of *in pari delicto.*

Concerning CKB, this Court is also satisfied that the principles concerning the claim against Marsala are equally applicable to the law firm and, therefore, summary judgment should be denied.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Defendants, Cardillo, Keith & Bonaquist, P.A. and Christopher Marsala's Amended Motion for Summary Judgment (Doc No. 171) be, and the same is hereby, denied and the matter shall proceed to trial in the United States District Court as scheduled.

DONE AND ORDERED.