**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 16, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBIN D. CHAPLIN,

Plaintiff - Appellant,

v.

PARK HOSPITAL DISTRICT, INC., a
Colorado non-profit corporation, d/b/a
Estes Park Medical Center,

Defendant - Appellee.

No. 09-1482
(D. Ct. No. 1:08-CV-00717-RPM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **SEYMOUR**, and **LUCERO**, Circuit Judges.

Plaintiff-appellant Robin Chaplin appeals from the district court's order granting

defendant-appellee Park Hospital District, Inc. d/b/a Estes Park Medical Center

("EPMC") summary judgment on all Ms. Chaplin's claims. We have jurisdiction under

28 U.S.C. § 1291 and AFFIRM for substantially the same reasons as set forth in the

district court's September 30, 2009 order.

**I. BACKGROUND**

Ms. Chaplin began working as a bedside nurse at EPMC in 2002. In July of 2004,

---

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

she began experiencing significant neck and back pain that became progressively worse over time. Indeed, by October 2004, her physical ailments had become so debilitating that she sometimes struggled to perform the physical aspects of her job and was forced to miss work at various times when her symptoms intensified. Nevertheless, she remained employed at EPMC and continued to perform the functions of a bedside nurse when her physical condition permitted.

In 2007, Ms. Chaplin began informing her supervisors of her condition and of her doctors' recommendations that she stop working as a bedside nurse. On April 3, 2007, Ms. Chaplin requested that she be transferred to the position of Unit Coordinator, a clerical position, in order to accommodate her physical ailments. The specific position she sought, however, was occupied by another employee who was on maternity leave. Nevertheless, Ms. Chaplin claims to have been told by her supervisors that if she resigned from her nursing position and applied for the Unit Coordinator position, she would "likely be provided the new position." In reliance on this statement, Ms. Chaplin sent a letter to her supervisor in which she formally expressed her interest in the Unit Coordinator position and formally resigned from her position as a bedside nurse, effective May 15, 2007. EPMC immediately accepted her resignation but did not immediately respond to her inquiry regarding the Unit Coordinator position.

Although she had resigned and had not yet received a response from EPMC regarding her interest in the Unit Coordinator position, Ms. Chaplin submitted a request for a medical leave of absence on April 30, 2007. She requested that her leave begin on

May 15th, the effective date of her resignation. When, after nearly two weeks, EPMC had not responded to her request for medical leave, Ms. Chaplin contacted the human resources department and discovered that her leave was denied because she had resigned and would therefore not be employed by EPMC during the period of requested leave.

Ms. Chaplin was never considered for the Unit Coordinator position, and her employment at EPMC ended, in accordance with her letter of resignation, on May 15, 2007. Shortly thereafter, Ms. Chaplin obtained a position at a drug and alcohol rehabilitation center. Although this new position does not impose the same physical rigors as her position at EPMC, it is a full-time nursing position.

Almost a year after leaving EPMC, Ms. Chaplin filed the instant lawsuit in which she alleges: (1) failure to accommodate her disability under the Americans with Disabilities Act ("ADA"); (2) interference with her rights under the Family Medical Leave Act ("FMLA"); (3) breach of an implied employment contract; and (4) promissory estoppel.[1] During the first scheduling conference, the district court invited EPMC to seek summary judgment within thirty days, which it did. Ms. Chaplin filed a response in opposition, in which she primarily argued the existence of disputed facts and that she had not been given an adequate opportunity to obtain discovery. Ms. Chaplin's response also suggested a narrow theory of disability—namely, that she is disabled for purposes of the ADA because her physical condition prevents her from performing the functions of a

---

[1]Ms. Chaplin's complaint also contained several other claims which have since been dismissed and are not the subject of this appeal.

bedside nurse. *See* Pl.'s Resp. to Def's Mot. for Sum. J. at 11 ("Plaintiff's treating physicians . . . unanimously conclude that she has [debilitating injuries], which in their opinion would create an impaired ability to perform the necessary functions of *bedside nursing*, that her condition would cause extreme and/or debilitating pain as she attempts to perform the regular duties of *bedside nursing*, and that it would greatly interfere with her ability to perform these duties to such an extent that she will be forced to *give up bedside nursing as a profession.*") (emphasis added). During argument on the summary judgment motion, however, Ms. Chaplin's counsel suggested that her physical condition precluded her from performing "many, many different kinds of jobs." Supp. App'x at 16.

In a brief order, the district court granted EPMC summary judgment on all of Ms. Chaplin's claims. Specifically, the court held that: (1) Ms. Chaplin failed to establish an adequate basis for further discovery; (2) Ms. Chaplin failed to establish a disability under the ADA because her inability to perform the particular job of a "bedside nurse" is insufficient to establish that she is substantially limited in her ability to perform a class of jobs or a broad range of jobs in various classes; (3) Ms. Chaplin's FMLA claim failed because she was no longer employed by EPMC during the period of leave requested; and (4) statements by EPMC employees that Ms. Chaplin would "likely" receive the Unit Coordinator position were insufficient to establish an implied contract or an enforceable promise. This appeal followed.

## II. DISCUSSION

On appeal, Ms. Chaplin contends that the district court impermissibly invited

- 4 -

EPMC to move for summary judgment and that the court erred in granting EPMC summary judgment on each of Ms. Chaplin's claims.  We disagree.  Contrary to Ms. Chaplin's assertions, the district court's request that EPMC seek summary judgment was not an abuse of discretion, nor is it, as Ms. Chaplin contends, "indicative of bias by the bench."  Rather, "the court always can 'invite' the appropriate party to move under Rule 56 when it thinks the case is ripe for summary disposition."  10A Charles A. Wright et al., Federal Practice and Procedure § 2720 (3d ed. 2010); *see also Goldstein v. Fidelity & Guar. Ins. Underwriters, Inc.*, 86 F.3d 749, 751 (7th Cir. 1996) ("It is . . . largely unnecessary [to consider summary judgment *sua sponte*], as a district court can always invite a non-moving party to file a motion for summary judgment in its favor.").

With regard to Ms. Chaplin's ADA claim, we need not address the district court's conclusion that she failed to establish a disability, because it is apparent from the record that her claim fails on another ground.  *See Mosier v. Callister, Nebeker & McCullough*, 546 F.3d 1271, 1275 (10th Cir. 2008) ("We may affirm the district court's decision for any reason supported by the record.").  "[A]t the summary judgment stage, the plaintiff-employee bears the burden of specifically identifying a vacant position, reassignment to which would serve as a reasonable accommodation."  *Duvall v. Georgia-Pac. Consumer Prods.*, 607 F.3d 1255, 1263 (10th Cir. 2010).  Ms. Chaplin identifies only the Unit Coordinator position as a reasonable accommodation to which she could have been reassigned.  The record establishes, however, that the Unit Coordinator position was, and is to this day, held by another EPMC employee.  Accordingly, Ms. Chaplin cannot satisfy

her burden on this claim.

Finally, after carefully reviewing the parties' briefs and the appellate record, we agree with the district court that Ms. Chaplin has not established, an entitlement to FMLA leave, the existence an implied contract, or the existence of an enforceable promise.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM for substantially the same reasons set forth in the district court's September 30, 2009 order.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge

- 6 -